RAILWAY COMPANY *v.* ROBBINS.

Opinion delivered March 11, 1893.

1. *Defective railway track—Death of brakeman.*

   In an action for damages for the killing of plaintiff's intestate while in the discharge of his duties as brakeman upon defendant's railroad, it appeared that the accident occurred at defendant's switch-yard; that the cross-ties in the yard lay exposed above the ground, the spaces between them being unfilled; that, at the place of injury, the track was rougher and more dangerous than elsewhere in the yard; that if the space between the ties had been filled, the danger of making couplings would have been reduced; and that in some other similar yards on defendant's road such spaces were filled. *Held*, that there was evidence that defendant was negligent in thus maintaining its switch-yard.

2. *Proximate cause of death—Exposed ties.*

   In such case evidence that deceased went upon the track where the ties were less exposed, and passed safely along until he reached the place of their greatest exposure and there fell, was sufficient, in the absence of any other apparent cause, to warrant the jury in finding that the condition of the track caused him to fall.

3. *Assumption of extra risks.*

   The fact that deceased knew that the cross-ties in the switch-yard were exposed, and consequently were dangerous, will not make him chargeable with notice of the extra hazard to which he was exposed at the place where he fell.

4.  *Damages for killing—When excessive.*

    In an action on behalf of the widow and next of kin to recover damages for the killing of plaintiff's intestate, the proof was that deceased was 29 years old, and consequently his expectancy of life was 35 years; that the pecuniary loss to his family by reason of his death did not exceed $540 per annum, with no probability of increase; that an annuity of that amount could be purchased for $5,692.68. *Held*, that a verdict of $7500 was so excessive as to show that the jury had adopted an incorrect method of calculating the damages, or was misled by sympathy.

5.  *Damages for pain and suffering—When not excessive.*

    In an action for the benefit of the estate of plaintiff's intestate, an award of $2500 for the pain and suffering of deceased will not be set aside where it appears that his leg was mangled and his system subjected to a terrible shock, while he survived for 24 hours under intense pain and in the anguish of impending dissolution.

Appeal from White Circuit Court.

GRANT GREEN, JR., Judge.

Mrs. E. M. Robbins, as administratrix of the estate of J. B. Robbins, deceased, sued the St. Louis, Iron Mountain & Southern Railway Company.

The complaint alleged, in substance, that while deceased was in the employ of defendant as a brakeman on one of its trains, and was in the discharge of his duty as such brakeman, he was, by the negligence of defendant and without fault upon his part, run over by the train and so badly injured that shortly thereafter he died. There were two counts in the complaint; one asked for $20,000 for the benefit of the widow and next of kin, and the other asked for $5000 for the benefit of the estate of deceased.

The answer denied negligence on the part of defendant, and alleged that the death of deceased was caused by contributory negligence on his part.

Upon the first count the jury returned a verdict in favor of plaintiff for $7500; upon the second, for the sum of $2500. Defendant has appealed.

*Dodge & Johnson* for appellant.

1. The verdict in this case is not sustained by the evidence, but on the contrary is against the evidence. The sole issue in the case is, did the deceased come to his death by reason of the defective track, without contributory negligence on his part? The presumption is that the defendant performed its duty, and when this is overcome by positive proof that there were defects, the plaintiff is met by the further presumption that the master had no notice. 46 Ark. 567–9. It does not follow, because Robbins was killed, that his death was caused by the negligence of his employer. 41 Ark. 391. There is no proof as to what caused Robbins to fall—none that he stumbled upon the ties, or that the ties were defective.

2. There was no proof of any negligence which proximately contributed to the injury of the intestate. 35 Ark. 615. The track was not defective.

3. When the evidence in any given case tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. 99 Mass. 605; Wills on Circumstantial Ev. pp. 157–8; 50 N. W. Rep. 365. The plaintiff failed to prove how the deceased came to be injured.

4. The deceased was guilty of such contributory negligence as to preclude a recovery. 41 Ark. 549; 51 *id.* 476; 41 *id.* 389; 48 *id.* 348; *ib.* 468; 53 *id.* 466; 46 *id.* 567; 54 *id.* 389. We have thus given all of the decisions of the State of Arkansas bearing directly upon the points in this case, and they all hold that:

1. The condition of the track could not be held as defective, if it was like all other tracks on the railroad, at the spurs, and switches, and yards.

2. That if it was defective, there was no proof to show that the track caused the accident, as was said in the Gaines and Townsend cases. In other words, the

cause was not proved, and therefore the effect could not be legitimately charged to the defective condition of the track, if there had been any defect.

3. The acts of the deceased contributed proximately to his own injury; he should have seen the condition of the track, as he was standing on it in broad daylight; if he did not see it, it was his own carelessness and neglect. Then, after seeing it or standing upon it, his manner in making the coupling was in the highest degree careless or negligent, and even if his own statement as to how he was injured is not true, the proof otherwise clearly established the fact that he was guilty of contributory negligence.

See 150 Mass. 423; 5 McCrary, 471; 75 Ill. 108; 47 Miss. 420; 12 Metc. 415; 41 Miss. 131; 2 Mees. & W. 244; 1 Ad. & El. 36; 4 Bing. 142; 39 Fed. Rep. 620; 74 Ind. 445; 14 S. W. Rep. 243; 20 Pac. Rep. 711; 41 Ark. 542; 71 Mo. 164; 5 A. & E. R. Cas. 610; 12 *id.* 210; 13 N. W. Rep. 508; 78 N. C. 300; 20 Mich. 105; 5 Oh. St. 564; 32 Ia. 357; 45 Ark. 325; 13 S. W. Rep. 801; Thomp. Neg. 1953; 16 C. B. (N. S.), 692; Wood, Mast. & S. sec. 382; Sh. & Redf. Neg. sec. 99; 61 Iowa, 714; 21 A. & E. R. Cas. 634, 642-3; 13 Atl. Rep. 82; 53 Mich. 212; 122 U. S. 194; 33 Mich. 134.

5. The damages are excessive. The pecuniary loss, at the highest estimate, could not have exceeded $45 per month. This was the limit. 52 Fed. Rep. 378; 41 Ark. 388; 3 Suth. Dam. p. 284; 29 Gratt. 431; 16 S. W. Rep. 929; *ib.* 240; 48 Fed. Rep. 663.

*House & Cantrell* for appellee.

The law of this case may be stated thus:

1. When John B. Robbins entered the service of the defendant company as a brakeman, it assumed a duty to him to construct and maintain its roadbed and tracks in a reasonably safe and suitable condition, so as not

necessarily to enhance the dangers incident to the employment.

2. John B. Robbins assumed the natural risks of his employment, but did not assume the risk arising from the negligence of the appellant in constructing defective roadbed or track. This risk is not within the contract of service.

3. Robbins was not required to inspect the roadbed or track to see if there were defects. He was not bound to search for dangers, except such as were patent to ordinary observation.

4. He had a right to rely upon the defendant that it would perform its duty towards him in providing and maintaining its roadbed and tracks in a reasonably safe condition.

5. The fact that he might have known of defects, or that he had the means or opportunity of knowing of them, will not preclude him from recovery, unless he did in fact know of them, or in the exercise of ordinary care ought to have known of them.

6. If Robbins was killed by reason of the negligence of the defendant in not maintaining a reasonably safe roadbed or track, the plaintiff can recover unless Robbins was guilty of contributory negligence which proximately caused his death.

If these principles are correct, then the plaintiff is entitled to recover. See 48 Ark. 345 ; 100 U. S. 217 ; 11 A. & E. Ry. Cases, 199 ; 8 *id.* 122 ; 92 Am. Dec. 210 ; 21 Am. Rep. 389 ; 22 Am. St. Rep. 520 ; 59 Mo. 504 ; 49 N. Y. 53 ; 60 *id.* 607 ; 2 S. W. Rep. 513. As to contributory negligence, see Beach, Cont. Neg. sec. 7 ; 53 Ark. 458 ; 8 Allen (Mass.), 442 ; 31 A. & E. R. Cas. 322 ; 41 *id.* 366 ; *ib.* 262 ; 31 *id.* 213 ; 15 *id.* 275 ; 8 *id.* 128 ; 43 Fed. Rep. 646 ; 25 Am. St. Rep. 51 ; 27 *id.* 929 ; 44 Wis. 48. The fact that Robbins might have known of the defects in the track if he had examined, or that he had the means

and opportunity of knowing them, will not bar a recovery unless he did in fact know of them, or in the exercise of ordinary care he ought to have known of them. 48 Ark. 347. But even actual knowledge is not conclusive against the servant. It is a question for the jury. Unless the defect is so obviously dangerous that a prudent man would not incur the risk, the servant may recover. Wood on Master and S. 385, 388. The coupling was attempted in the ordinary way, and only such prudence as a brakeman would exercise was required. 53 Ark. 345; 18 S. W. Rep. 172; Sh. & Redf. Neg. secs. 211, 222. The proof shows that the defective roadbed was the cause of the injury. 18 Am. St. Rep. 729. The verdict is not excessive. 41 Ark. 388; 42 Fed. Rep. 583; 27 Am. St. Rep. 929.

HEMINGWAY, J. The appellant relies upon four grounds to reverse the judgment, which are as follows :

1. That there is no proof of negligence on its part.

2. That if any negligence is shown, it does not appear to have occasioned the injury.

3. That if the proof showed that the injury was occasioned in part by the defendant's neglect, the deceased knew of the danger and assumed the risk.

4. That the verdict is excessive.

The following state of case might have been found from the evidence, and is sufficient to the determination of the three grounds first stated.

The injury was done in switch-yards where the ties lay exposed above the ground, and the spaces between them were unfilled; at the immediate place of the injury, crooked ties had been put down, some with the bow up and some with it down, their exposure being greater and the track rougher and more dangerous there than elsewhere in the yard ; if the space between the ties had been filled, the danger of making couplings would have been reduced,

and in some other similar yards on defendant's road such spaces were filled. There were about two miles of track in this yard, and the deceased, being a brakeman upon a local freight train, had been accustomed to doing a brakeman's work in passing there for eight months.

Upon this state of case we proceed to announce our conclusions upon the several grounds relied on.

1. The irregular placing of the ties and the failure to fill the intervening spaces is shown to have enhanced the danger of the deceased and others in like service when making couplings, and as it was in a much used switch yard, the defendant should have known of its existence and of the increased danger resulting to the brakeman from it; there is no proof that the spaces might not have been filled and the enhanced danger avoided by the exercise of reasonable care, and as it appeared that such had been done in other of defendant's yards, we cannot say that there was no proof that defendant was negligent in thus maintaining its track.
1. When railway liable for defective track.

2. The deceased went upon the track where the ties were less exposed, and the fact that he passed safely along until he reached the place of their greatest exposure, in the absence of any other apparent cause, warranted the jury in finding that the condition of the track caused him to fall. The circumstances do not tend equally to two conclusions, and the rule announced in *Smith* v. *First National Bank*, 99 Mass. 605, does not apply.
2. As to proximate cause of injury.

3. If the track had been in the same condition where the injury occurred as in other parts of the yard, we think that knowledge of it should be charged to the deceased; and if he were chargeable with such knowledge, plaintiff could not recover, since deceased is held to have assumed the risk arising from a known dangerous condition that had continued from the time of his employment. But as the injury occurred where the exposure of the
3. When servant does not assume extra risks.

ties was greater than in other places, and where the risk was correspondingly increased, we cannot say that the deceased knew of the extra hazard to which he was there exposed, or that he assumed the risk arising from it.

4. When damages for killing excessive.

4. The proof as to the damage sustained by the widow and children was that the deceased was twenty-nine years of age; that he earned as a brakeman sixty dollars per month, of which he gave them from forty to forty-five dollars; and that he had never accumulated anything. In the course of his employment the deceased was much away from his home, and there is nothing in the proof, or in the character of his employment, to indicate that he was of pecuniary advantage to his family in any other way than contributing money to their support. The evidence discloses no probability that he would have increased his earnings, or contributed from them a larger part than he had theretofore contributed.

Upon this state of case the jury found a verdict for $7500. If it were proper to adopt as a criterion for measuring the damages either the sum that, put at interest, would yield periodically a net income equal to the contributions the deceased would have made for a like time; or a sum estimated as the sum of all contributions that he might have been expected to make if he had lived out the term of his expectancy, to be ascertained by multiplying the amount given annually by the number of years of his expectancy, the verdict would not be excessive. But neither furnishes a correct criterion for estimating the damage—the former, because it provides for an annual income equal to the annual contributions lost, and in addition vests the fund that yields it; and the latter, for the same, as well as the additional reason, that the award of the jury is of a sum to be paid at once, whereas the sum of the contributions expected would have been paid in installments deferred from month to month through a term of more than thirty-five

years, and their present value would therefore be less than their ultimate amount. The highest estimate in the evidence of the amount contributed by deceased to the plaintiffs was $540 per annum; and if they receive a sum sufficient to purchase an annuity of that amount for a term of years equal to his expectancy of life, that loss would seem to be entirely compensated. Indeed such present sum would more than compensate the loss of such anticipated contribution, for the former is paid down, and its value is affected by no contingencies; while the latter is in expectancy only, subject to many contingencies; and is but equal to the former if the contingencies never arise. According to the Carlisle Tables, estimating money at eight per cent. per annum, $5,692.68 would purchase an annuity of $540 for the term of expectancy of the deceased, and we can see no way that the jury could have arrived at a larger sum without going beyond disclosed probabilities of future advantage and taking into account bare possibilities. This they were not warranted in doing; on the contrary, bare possibilities should have been disregarded; and the amount of the contributions, calculated upon the basis that they would continue without interruption for the term of his expectancy of life, should have been discounted on account of the contingencies to which they were subject.

We can find in the evidence no basis for a verdict in excess of the sum indicated, and a finding for that sum could be reached only by assuming that no unfavorable contingency would arise. Inasmuch as this is true, we must conclude that the jury reached its verdict either by pursuing some such method as those we have criticised, or because it misconceived the law as to the element of damage or because it labored under the influence of feelings inflamed by the tragic narrative contained in the record. We are clearly of opinion that no other explanation of the damages awarded can be made; and this

conviction calls for and demands the exercise of the court's power of supervision. *Texas & St. L. Ry. Co.* v. *Eddy*, 42 Ark. 527.

As the elements of damage in this class of cases are largely indeterminate, and admit of no exact standard of measurement, it is seldom that the court's duty to review a jury's award can be made to appear; but this difficulty does not excuse a performance of the duty whenever it is clearly discerned. In England and America the power has been exercised often, and that, too, where the injury was to the feelings or the sentiments, or the damage consisted of pain and suffering caused by injury to the most delicate organs. Wood's Mayne on Dam. p. 746 and cases; 3 Suth. on Dam. 259; 3 Sedg. Dam. sec. 1319 *et seq; Gilbert* v. *Berkinshaw*, Lofft's Rep. (Eng. K. B.), 771; *Fotheringham* v. *Adams Exp. Co.* 36 Fed. Rep. 252; *Burdick* v. *Weeden*, 9 R. I. 139; *Wood* v. *Gunston*, Style (Eng.), 466; *Worster* v. *Proprietors of Canal Bridge*, 16 Pick. 547; *Mo. Pac. Ry.* v. *Dwyer*, 36 Kas. 58; *Goetz* v. *Ambs*, 22 Mo. 170; *Swartzel* v. *Dey*, 3 Kas. 244; *Clapp* v. *Hudson Riv. R. Co.* 19 Barb. 461; *Decatur* v. *Fisher*, 53 Ill. 407; *Chicago* v. *Kelly*, 69 Ill. 475.

5. Damages for pain and suffering.  The recovery upon the second cause of action, for the benefit of the estate, was for the pain and suffering of the deceased. His leg was mangled and his system subjected to a terrible shock, which he survived for twenty-four hours under intense pain and in the anguish of impending dissolution. Without intimating that we would have awarded a sum so large, we cannot say that a verdict for $2500 appears so excessive as to warrant this court in disturbing it. The judgment upon this count is affirmed.

Upon the other count we feel that $4000 would fairly and fully compensate the widow and children for the pecuniary loss that the record shows them to have sustained, since it would purchase an annuity during the term of

his expectancy of life in excess of half of his earnings ; if therefore the plaintiff will remit thirty-five hundred dollars of the judgment on that count, it will be affirmed for the balance ; if not, it will be reversed, and the cause remanded for a new trial.