The Baltimore and Ohio Southwestern R. W. Co. v. Little, Admx.

THE BALTIMORE AND OHIO SOUTHWESTERN RAILWAY COMPANY v. LITTLE, ADMINISTRATRIX.

[No. 18,124.   Filed December 17, 1897.]

APPEAL AND ERROR.—*Complaint.*—*Review.*—Where a cause is submitted to the jury upon a single paragraph of a complaint, other paragraphs thereof will not be considered on appeal. *pp. 167, 168.*

PLEADING.—*Demurrer.*—A demurrer in the following language: "The defendant demurs to each, the first, second, third, and fourth paragraphs of the plaintiff's amended complaint, separately and severally, for the reason that neither of said paragraphs states facts sufficient to constitute a cause of action against it," challenges the paragraphs of complaint severally. *p. 169.*

NEGLIGENCE.—*Fellow Servant.*—*Employers' Liability Act.*—The exemption from the fellow servant rule, as provided by subdivision three of the employers' liability act, is intended to make corporations liable where the servant does an act or omits action in obedience to the command of the corporation, given by rule, regulation, or by-law, or through any person delegated with authority from the corporation to make the command, and not from the omission or neglect of the servant to comply with such command. *pp. 169-171.*

SAME.—*Fellow Servant.*—*Employers' Liability Act.*—The exemption from the fellow servant rule of servants in charge of any signal, telegraph office, switch yard, shop, round-house, locomotive engine, or train upon a railway, as provided by the employers' liability act, section 7083, Burns' R. S. 1894 (Acts 1893, p. 294), does not include a brakeman charged with the duty of opening and closing a switch. *pp. 171-174.*

From the Pike Circuit Court. *Reversed.*

*W. R. Gardiner, C. G. Gardiner* and *E. W. Strong,* for appellant.

*Cullop & Kessinger* and *O'Neal & O'Neal,* for appellee.

HACKNEY, J.—In the lower court the appellee recovered a judgment for damages alleged to have arisen from the appellant's negligent killing of John F. Little. The complaint was in four paragraphs, but the cause was submitted to a jury upon the second paragraph

only. It would, therefore, be improper to consider the sufficiency of other paragraphs. *Robinson* v. *Dickey*, 143 Ind. 205; *Marvin* v. *Sager*, 145 Ind. 261. The second paragraph of complaint alleged that Little was a locomotive engineer, in the employ of the appellant, in charge of a locomotive hauling a fast train eastward over the appellant's road; that a west bound extra freight train, in charge of a crew of appellant's employes, ran to the station of Cochran, where the appellant maintained switches, sidetracks, and a switch yard, and where said train was required to be sidetracked to permit said east bound passenger train to pass without stopping; "that one of the crew, the head brakeman, to whom the appellant had delegated its authority in that behalf (defendant, by its neglect and negligence, had no other employe at said switch and switch yard in charge thereof) to unlock and open the switch, so that said train could go upon said sidetrack, and whose duty it was, by the rules of the defendant, after said train got upon said sidetrack, to lock and close said switch, and the said brakeman did unlock and open said switch and did permit the said freight train to go in said switch and in and upon said sidetrack, and there said freight train was allowed to be and stand by the crew running and managing the same. But the said head brakeman, after said train got in upon said sidetrack, carelessly and negligently forgot and failed to close and lock said switch, and carelessly and negligently left the same open, unlocked and unfastened and in a dangerous condition." It is then alleged that Little's train, in passing said Cochran station, ran into the open switch and upon the sidetrack, colliding with said standing freight train and killing Little, all without the fault or negligence of said Little.

It will be observed that this paragraph is predicated

upon the negligence of the head brakeman of the freight train, whose duty it was to open and close the switch, in forgetting to close it after the train had gone in upon the sidetrack.

The language of the appellant's demurrer was that "the defendant demurs to each, the first, second, third, and fourth paragraphs of the plaintiff's amended complaint separately and severally, for the reason that neither of said paragraphs states facts sufficient to constitute a cause of action against it." Appellee's learned counsel suggest that "Such a demurrer would have to be overruled if a single good paragraph appeared." We suppose it is intended to make the objection that the demurrer was joint and not several; but we think it manifest that the demurrer was to the paragraphs severally.

On behalf of the appellant the sufficiency of the second paragraph of the complaint is attacked by assignment of error and protracted discussion, and, while there is a mistaken contention for the appellee that the sufficiency of this paragraph is not attacked in discussion, her counsel discuss, as applicable to the evidence, the principles involved in the objections urged against the complaint. The limits of our inquiries have been narrowed somewhat by the following concessions of counsel for the appellee: "At the very threshold of our argument we feel called upon to concede, which we do frankly, that our cause would be untenable, under our Indiana decisions, but for the 'Employers' Liability Act' of March 4, 1893," * * * and "we concede again that we must ground our claim for an affirmation of the judgment on subdivisions numbered three and four of section one of that act."

This concession, which is undoubtedly correct, would, in the absence of the provisions of the act mentioned, defeat the appellee's recovery upon the rule

that the head brakeman, whose negligence caused the collision and the death of Little, was a fellow servant of Little as to the act negligently omitted. It remains, therefore, to determine whether the paragraph of complaint in question stated a cause of action, freed, by the act mentioned, from the fellow servant rule.

The third and fourth subdivisions of section one of the act of March 4, 1893 (Acts 1893, p. 294), section 7083, Burns' R. S. 1894, are as follows, our figures separating them into specifications of exemption from the fellow servant rule: (1) "Third. Where such injury resulted from the act or omission of any person done or made in obedience to any rule, regulation or by-law of such corporation, or" (2) "in obedience to the particular instructions given by any person delegated with the authority of the corporation in that behalf." (3) "Fourth. Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any signal, telegraph office, switch yard, shop, round-house, locomotive engine or train upon a railway, or" (4) "where such injury was caused by the negligence of any person, co-employe or fellow servant engaged in the same common service, in any of the several departments of the service of any such corporation, the said person, co-employe or fellow servant, at the time acting in the place, and performing the duty of the corporation in that behalf, and the person so injured, obeying or conforming to the order of some superior at the time of such injury, having authority to direct; but nothing herein shall be construed to abridge the liability of the corporation under existing laws."

The gist of the cause of action alleged, as we have seen, was in the omission of a duty, which duty was required by rule of the appellant corporation. The complaint did not allege that the omission by the

brakeman was in obedience to a rule.  It is plain, therefore, that the case does not fall within the first of the above specifications of the act.

The appellee's construction of this specification is that if any duty is enjoined, by rule, etc., upon a servant, and the duty is omitted or neglected, the corporation is liable for resulting injury.  If this was the proper construction of the specification, there would be little requirement for other provisions of the act than those of the third subdivision, since it would strike down the fellow servant rule in its entirety wherever the act or omission is in the line of duty.  It would make the corporation liable for the act or omission of a servant, whether negligent or not, and whether the duty negligently performed or negligently omitted may have been enjoined by the general rules, etc., of the corporation, or is in obedience to particular instructions from one "delegated with authority in that behalf."  Such was not the intention of the legislature.  On the contrary, we think there can be no doubt that it was intended by the third subdivision to make corporations liable, where the servant does an act or omits action in obedience to the command of the corporation given by rule, regulation or by-law, or through any person delegated with authority from the corporation to make the command and such act or omission results in injury to another.  This construction not only arises from the unambiguous language of the subdivision, but is supported by the general character of the act and the provisions of subdivision four.  Before leaving the third subdivision, it may be well to recall that the complaint does not allege the omission to have been pursuant to particular instructions from anyone, and in any view of the case, the second specification would give no aid to the pleading.

The fourth subdivision relates to the negligence of

servants, and not, as with the third subdivision, to acts or omissions done or made by order of the company or some one in command. The specification which we have numbered three describes a class of servants for whose negligence corporations are made liable, and they are servants most of whom, if not all, have heretofore been held not to perform a duty which the master owed to other servants in the same general line of the common service, and therefore fellow servants. In other words, this specification but enlarged the class of vice principals as it had before existed. Does the negligent omission at the foundation of the cause of action here pleaded appear from the pleading to have been by any of the vice principals so described? The only allegation of the complaint is that the omitted duty was by a brakeman, and we find that brakemen are not named in the law among the vice principals therein so described.

But, in order to support the complaint, counsel for the appellee insist that the legislature did not intend to use the phrase "switch yard," but intended to separate the two words with a comma. With this change of punctuation, they would add to the number of vice principals one in "charge of any * * * switch," and then, from the duty to open and close the switch when he admitted his train to the sidetrack, argue that the brakeman was in "charge" of the switch at the time he neglected to close it. This position is supported by the insistence that there is not, in railroading parlance, any such term as "switch yard," and that the lexicographers recognize no such term.

In the statute the word "yard" is employed in connection with and as descriptive of railway service, and, as said in *Harley* v. *Louisville, etc., R. W. Co.*, 57 Fed. 144, "the court may know from its general knowledge of the methods and appliances of railroad com-

panies * * * [the yard] consists of sidetracks upon either side of the main tracks, and adjacent to some principal station or depot grounds, where cars are placed for deposit, and where arriving trains are separated and departing trains made up. It is the place where such switching is done as is essential to the proper placing of cars either for deposit or for departure."

In *St. Louis, etc., R. W. Co.* v. *Robbins*, 57 Ark. 377, 21 S. W. 886, the supreme court of Arkansas recognized the propriety of the term, and frequently employed it with reference to an action for personal injuries sustained in the yard of the railroad company where the switching and making up of trains was conducted. In Rapalje & Mack's Digest of Railway Law, Vol. 5, p. 60, a division of subjects entitled "Switch Yards" is employed. "Railroad yard" and "switch yard," we have no doubt are synonymous, and the latter term was used in the act under consideration as descriptive of the former. The term found its place in the allegations of the second paragraph of complaint, and was doubtless understood by the draughtsman of the pleading to describe a yard where switching is done by a railroad company.

Accepting our construction of the third specification there is no place for the contention of appellee's learned counsel that the temporary use of the switch by the brakeman placed him in "charge" of it, within the meaning of the act.

Other arguments are made as to the duties of yard master and conductor, as disclosed by rules of the company, some of which rules, it is admitted, were not in evidence. These arguments were addressed to the evidence and are not pertinent to the ruling upon demurrer to the complaint. The complaint proceeds upon no theory involving a breach of duty as to yard

City of Terre Haute *et al. v.* Evansville and Terre Haute R. R. Co.

masters or conductors, and we need to decide nothing with reference to such theory.

Other questions are presented by the record and argument, but, since the complaint must be held bad, no occasion exists to pass upon them, and they may not again arise.

The judgment is reversed, with instructions to sustain appellant's demurrer to the second paragraph of the complaint.