THOMPSON, BY NEXT FRIEND, *v.* THE CITIZENS STREET RAILWAY COMPANY.

[No. 18,143.   Filed April 20, 1899.]

NEGLIGENCE.—*Pleading.*—*Evidence.*—Where a complaint against a street railway company for personal injuries contains only a general charge of negligence in the manner of running cars, plaintiff cannot prove that his injuries resulted from the failure of defendant to furnish a safe place to work, and safe appliances, or that the injury was wilful. *pp. 464, 465.*

MASTER AND SERVANT.—*Negligence.*—*Personal Injuries.*—*Proximate Cause.*—Plaintiff was employed by defendant to turn switches at an intersection of its street car lines, and, after turning a switch on the south track, stepped backward toward the north track, and so near it that he was struck by a car going west on the north track, and was injured. There was room for him to stand safely between the tracks at the point where he was injured, but he stepped back-

ward too far in order to avoid a frightened team of horses drawing a car on the south track. *Held,* that the threatening appearance of the horses drawing the approaching car was the proximate cause of the accident, which was one of the risks of the employment assumed by plaintiff. *pp. 465, 466.*

NEGLIGENCE.—*Street Railroads.—Presumptions.*—It will not be assumed, in the absence of evidence, that the body of a street car passing around a curve at the rate of eight or ten miles an hour will rock upon its trucks to such an extent as to strike a person occupying a position far enough away from the tracks to escape collision with a car passing at a lower rate of speed. *p. 467.*

SAME.—*Proximate Cause.—Street Railroads.*—A street railway company will not be held liable for an injury to plaintiff caused by a collision with a car because of the fact that the car was running at a rate of speed in violation of a city ordinance, where no causal connection is shown between the speed of the car and the injury. *pp. 467-469.*

From the Marion Superior Court.    *Affirmed.*

*George W. Galvin,* for appellant.

*W. H. Latta, Ferdinand Winter, W. H. H. Miller* and *J. B. Elam,* for appellee.

DOWLING, J.—Appellant brought this action to recover damages for injuries caused by the alleged negligence of appellee.

The complaint is in two paragraphs. The first alleges that while he was engaged in the performance of his duties as an employe of appellee, said appellee, by its negligence, ran its car against appellant, by which he was injured. The second paragraph states that appellee negligently ran its car at a greater rate of speed than six miles an hour, in violation of a city ordinance, and that while so running the same it ran said car against appellant, and permanently injured him.

The cause was tried by a jury, and a special verdict returned, and, on motion of appellee, a judgment was rendered thereon against appellant.

The part of the special verdict necessary to the determination of this appeal is substantially as follows: Appellant, on the 4th day of March, 1893, was sixteen years of age, and of

average size and intelligence for a boy of that age. He was then, and had been, in the service of appellee for more than one month at the crossing of Washington and Pennsylvania streets, in the city of Indianapolis, turning switch tongues, so as to direct cars going east on Washington street, so that they would turn and run either north on Pennsylvania street, or southeast on Virginia avenue, instead of due east on Washington street. In doing this work he became, and was on said day, familiar with the position of the said car tracks and the running of the cars thereon at said street crossing, and with the surroundings at said crossing; that said Pennsylvania and Washington street cross at right angles; that there is a double track on Washington street, which runs east and west, the cars going east running on the south track, and the cars going west running on the north track, and that these tracks connect with the double track running southeast on Virginia avenue. Appellant's duty required him to be constantly on and about these tracks, and when he turned the switch tongues his duty required him to stand between the tracks on Washington street. On March 4, 1893, appellant threw the switch tongue on the south track for a motor and trailer. There was a car, drawn by horses, following said motor and trailer so near that the horses' heads were right against the dashboard of the trailer. These horses drawing said car on said south track were frightened, and prancing about, and appellant, after throwing said switch tongue as aforesaid, believing, and having reason to believe, that he was in danger of being injured by said horses, in an effort to avoid being injured by said horses, stepped back from the south track so near to the north track that he was immediately struck by the front end of a trailer attached to a motor going west on said north track; that said motor and trailer came from the north, off of Pennsylvania street, and turned west upon the north street-car track on Washington street; that appellant, by looking and listening, could not have seen or heard the cars of appellee which struck

him approaching before they entered upon the curve at Pennsylvania and Washington streets; that at the time the trailer struck him it was running at the rate of eight or ten miles per hour; that the car to which said trailer was attached was being propelled by electricity; that in stepping back to the point where he was struck, appellant exercised such care as a reasonably prudent man should have exercised under like circumstances, and was, at the time, in the exercise of the care and prudence which an ordinarily prudent person ought to have exercised under the circumstances and surroundings. There was room for appellant to stand safely between the tracks, where he was standing, but the fractious horses and the sway of the trailer made it unsafe; that appellant, before stepping back to the position in which he was struck, did not see the car that struck him, but at the time he was struck he knew that the motor car which was drawing said trailer car had just passed, running very close to his body. Appellant did not, at any time before he was struck, look to see whether said motor car was drawing a trailer or not, but he knew that motor cars, passing in the same direction, did have trailers attached. There was no evidence that there was anything to prevent his seeing the trailer that struck him, if he had looked, but, if he had seen it he could not have avoided collision with it. There was no evidence whether appellant, in stepping back to avoid the horses, looked in every direction, and endeavored to guard against other danger. It was a part of appellant's duty, at the time he was injured, to look out for, and avoid collision with, passing cars. Conductors, by signal, direct motormen when to start and when to stop cars in their charge upon appellee's road. There was nothing to direct the attention of the motorman on the motor car to which said trailer was attached to the position appellant was occupying. The motorman, by the exercise of due care and attention, could have seen the position of appellant in time to have avoided so running his car as to strike him.

The errors assigned call in question the action of the court

in rendering judgment in favor of the appellee upon the special verdict.

A plaintiff must recover according to the allegations of his complaint, or not at all. In actions founded upon the alleged negligence of the defendant, the plaintiff cannot charge one kind of negligence and prove another. *Cleveland, etc., R. Co.* v. *Wynant,* 100 Ind. 160; *Armacost, Adm.,* v. *Lindley, Adm.,* 116 Ind. 295.

There is no averment in the complaint that the appellee did not provide appellant a safe place in which to work; that it failed to furnish him with safe machinery and appliances, or that it did anything which it could have foreseen would render the performance of his duties more hazardous, or that the injury was wilful. The authorities cited upon these propositions may therefore be laid out of the case.

The complaint, as has been seen, contains only (1) a general charge of negligence in running appellee's cars, and (2) a charge that the cars were run by electricity in a grossly negligent manner, at a greater rate of speed than six miles per hour, in violation of an ordinance of the city of Indianapolis limiting the speed to that rate.

The single question, therefore, is presented: Does it appear from the special verdict that the injury to the appellant was the result of the negligence of appellee in running its cars without due care, or at an unlawful rate of speed?

Upon these points the facts, as ascertained by the special verdict, are that appellant had been employed at the intersection of Pennsylvania and Washington streets for more than a month; that his duty was to turn switch tongues on the approach of street cars; that he was familiar with his surroundings, with the various tracks at that place, and with the running of the cars on those tracks.

It is shown by the answers of the jury to the thirteenth, forty-second, forty-fourth, forty-sixth, forty-eighth, and fifty-seventh interrogatories that there was room for appel-

lant to stand safely between the tracks at the point where he was standing when injured, but that owing to the "fractious" horses, and the "sway" of the trailer car, that place was rendered unsafe; that after throwing the switch tongue on the south track, he stepped backward toward the north track, and so near to it that he was struck by the trailer drawn by a motor car going west on the north track; that he stepped back to get out of the way of the horses drawing an English avenue car, which was following close upon the trailer, upon the south track; that the horses were frightened, and were prancing about, so that appellant had reason to believe he was in danger of being injured by them; that appellant's proximity to the north track was caused by his effort to escape injury from the horses drawing the car of appellee on the south track.

It is evident, we think, that the proximate cause of the accident and injury to the appellant was the threatening appearance of the horses drawing the car on the south track. His alarm from this circumstance led him to step backward toward the north track, and too near it for his safety. The conditions affecting his security at that place were just such as they had been during the whole period of his employment. In a moment of confusion and excitement he miscalculated the space occupied by moving cars on the north track, and he was struck by the front part of the trailer car. Had it not been for the presence, the fright, and the plunging of the horses, no accident would have occurred. *Kistner* v. *City of Indianapolis*, 100 Ind. 210; *Pennsylvania Co.* v. *Congdon*, 134 Ind. 226, 39 Am. St. 251; see note to *Gilson* v. *Delaware, etc., Co.*, 36 Am. St. 807, 65 Vt. 213; *O'Neal* v. *Chicago, etc., R. Co.*, 132 Ind. 110. The danger of such an occurrence was one of the risks of the employment, and was assumed by the appellant. *O'Neal* v. *Chicago, etc., R. Co.*, 132 Ind. 110; *Pennsylvania Co.* v. *O'Shaughnesey, Adm.*, 122 Ind. 588.

It is contended on behalf of the appellant that the "sway" of the trailer contributed to the accident, and that the "sway" was due to the velocity with which the car was moving. The verdict does not so find. All that it says is that the place where appellant was standing when injured "was rendered unsafe by the fractious horses and the sway of the trailer car." Precisely what is meant by the "sway" of the car is not clear. Any swinging movement, whether vertical or horizontal, would be covered by the term. The ordinary movement of the car around a curve may be accurately described as a swinging or swaying movement. In describing a curve, the line of the body of the car, on the outside of the curve, forms a tangent to the circle of which the curve is a part. Both ends of the car, on the outer side of the curve, are projected some distance from the track. A position which, alongside of a straight track, would be entirely safe, would be extremely perilous, and altogether untenable, at the side of a curve.

It cannot be understood from the verdict that the jury found that the speed of the trailer caused it to "sway." They nowhere say that it did. Other facts found are inconsistent with a supposition of this kind. At the time of the accident the car was moving at the rate of eight or ten miles per hour. Without evidence of the fact, we cannot assume that the body of a trailer car, running at so moderate a rate, would "sway" or rock upon its trucks to such an extent as to strike a person occupying a position near the track, but far enough away from it to escape collision with a car passing at a slower rate of speed.

It is next insisted that the appellee is liable because the accident occurred while the appellee was violating two provisions of an ordinance of the city of Indianapolis regulating the running of street cars: *First*, as to the rate of speed; and, *second*, as to the space of 200 feet required to be maintained between two cars driven in the same direction.

It may well be doubted whether such provisions of an ordinance, relating to the running of cars, adopted in the year

1864, and amended in 1876, long before the use of electricity as a motive power for street cars in the city of Indianapolis, can be held to apply to the operation of a street railway so equipped and operated in the year 1893; but it is not necessary for us to decide this question.

The special verdict does not show that the appellee, the Citizens Street Railway Company, was in existence either in the year 1864, when the original ordinance was passed, or in 1876, when the amendment fixing the rate of speed and prohibiting cars going in the same direction from approaching each other within a space of 200 feet was adopted. The jury did not find that this ordinance, and its amendment, applied to the appellee. There is nothing in its title to indicate that it does apply to the Citizens Street Railway Company. The amendment of the ordinance, which is all that is set out in the special verdict, is entitled "An ordinance to amend section twelve of an ordinance authorizing the construction, extension, and operation of *certain* passenger railways in and upon the streets of the city of Indianapolis, ordained and established the 18th day of January, 1864." The ordinance applies to *certain* passenger railways, but to what railways does not appear. Whether the appellee was one of these certain railways is not shown.

If it were assumed by us, without proof, that the appellee, the Citizens Street Railway Company, was in existence in 1864, when the ordinance was adopted, and that it was one of the "certain passenger railways" referred to in the ordinance, and subject to its provisions, the fact that the trailer car was moving at a greater rate of speed than six miles per hour at the time of the accident would not sustain the appellant's case. No causal connection is shown between the *speed* of the car which struck the appellant and the injury. Had the car been moving at the rate of six miles per hour, instead of eight or ten, and had appellant stepped backward as he did, at the instant he did, to get out of the way of the horses, he would have been struck by the passing car, not be-

cause of its rate of speed, but on account of his position near the track.

We deem it unnecessary to decide whether the act of March 4, 1893, known as the Employer's Liability Act, was in force at the time of the accident, for the reason that the injury to appellant is shown by the special verdict to have been the consequence of his own act in stepping back to get out of the way of the horses drawing a car on the south track. However, upon the question whether a motorman on an electric car and a switch tender working on the same line and for the same company are co-employes, we entertain no doubt that they sustain that relation to each other. *Indiana Car Co.* v. *Parker,* 100 Ind. 181; *Gormley, Adm.,* v. *Ohio, etc., R. Co.,* 72 Ind. 31; *Indiana, etc., R. Co.* v. *Dailey,* 110 Ind. 75; *Slattery's Adm.* v. *Toledo, etc., R. Co.,* 23 Ind. 81, and cases cited; *Bier* v. *Jeffersonville, etc., R. Co.,* 132 Ind. 78, and cases cited; *Baltimore, etc., R. Co.* v. *Little, Adm.,* 149 Ind. 167.

Finding no error in the record, the judgment is affirmed.