MORALES, PLAINTIFF AND APPELLEE, *v.* PORTO RICO RAILWAY, LIGHT & POWER COMPANY, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in an Action for Damages.

No. 1974.—Decided July 28, 1919.

DAMAGES—NEGLIGENCE—SPEED—URBAN ZONE—INTERURBAN ZONE.—There is no rule of law making it negligence *per se* for a trolley company to run its cars rapidly in a suburban district, and the decisions point to the contrary. The conclusion of the authorities is that while a street railway company must be exceedingly careful of the speed of its cars within an urban zone, in interurban or country zones it is more like a railroad, and the rule is that a person seeking to recover damages for injury in such zones must show that the speed was unreasonable under the circumstances.

ID.—ID.—JOINT ENTERPRISE.—To stop, look and listen is a duty that falls upon the driver of a vehicle who wants to cross a street railway whose cars are propelled by electricity, and in a joint enterprise this duty is extended to all of the occupants of the vehicle.

The facts are stated in the opinion.

*Mr. J. H. Brown* for the appellant.

*Messrs. Juan B. Soto* and *Luis Vizcarrondo* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

It is conceded that the facts in this appeal, barring the nature of the injuries, are identical with No. 1949, the case of Josefa Rosario against the same defendant. They were tried together in the District Court of San Juan and the alleged causes of action arose out of the same accident. Each of the complainants recovered a judgment and the defendant appealed.

Josefa Rosario, residing at Río Piedras, was the owner of a pig which was left by her on a property located at or about Stop 32 of the principal highway between San Juan and Río Piedras. She wanted to see the pig and Juana Morales wanted to go with her to gather coconuts. In the garage of their house was an automobile belonging to Martínez Reyes who had given these ladies permission to use it. Seated in the machine at the time of the expedition was

a youth, Francisco Sandalio Peroza, at the utmost sixteen years of age. He had occasionally driven the machine in which he was seated and he was a friend of some of the boys of one or other of the families of the two ladies. They asked Sandalio Peroza to join them in the expedition and to drive the car, and he was quite willing to go. He had no license as a chauffeur and his experience with machines was limited principally to driving between Río Piedras and Caguas. He had no experience in the streets of a city or where trolleys run. Sandalio was not hired for the outing, but went on invitation as did the sister-in-law of Juana Morales and two children of the last named. The excursion party proceeded to Stop 32, entered into the property on the south side of the road, saw the pig, gathered coconuts, all for about half an hour, and then started back. In crossing the track of the trolley in front of the property a car of the defendant collided with the automobile, upset it and threw it into a gutter or ditch and the two ladies were injured.

The principal theory of the court, as disclosed by its opinion, was that the electric car was going at its maximum speed and that such speed was negligence at the particular region, given the number of entrances or exits from the various properties located there. It is shown and conceded that the place where the accident occurred is a suburban district. No rule of law known to us makes it negligence *per se* for a trolley company to run its cars rapidly in such a district. The decisions point to the contrary. *Olivarría* v. *Porto Rico Ry. Lt. & P. Co.*, 26 P. R. R. 584; *Robinson* v. *Rockland T. & C. St. Ry. Co.*, 58 A. 57; *Wosika* v. *St. Paul Ry. Co.*, 83 N. W. 386; *Thompson* v. *Citizens' St. Ry. Co.*, 53 N. E. 462, 152 Ind. 461; *McKennan* v. *Omaha C. & B. St. R. Co.*, 149 N. W. 829; *Cable* v. *Spokane & I. E. R. Co.*, 23 L. R. A. 1227.

The upshot of the authorities is that street railway companies must be exceedingly careful of the speed within an urban zone, but that in interurban or country traffic they

are more like a railroad. The appellant sums up the rule fairly well by saying that complainant must show that the speed was unreasonable under the circumstances.

The appellee, however, does not place her principal reliance on the excessive speed as stated by the court, but invokes the doctrine of the "last clear chance." Section 1803 of the Civil Code provides:

"A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done."

And under such section that doctrine in one or other of its forms is applicable. We have said so in *Vargas* v. *Monroig,* 15 P. R. R. 26. We shall leave to the particular case the question of how far the doctrine is to be extended. Assuming, however, that a defendant is guilty who, having an opportunity to see the danger of a man on the tracks, fails to take the possible or proper precaution, we still feel bound to hold that the preponderance of the proof at the trial does not show the existence of such a duty on this defendant. We shall follow the appellant in his demonstration of the physical facts. As preliminary to that, it may be said that all the witnesses substantially agree that the automobile in coming out of the property never halted. To reach the highroad from the lane out of which the automobile came it is necessary to cross a sort of a bridge slightly inclined on both sides of the tracks, the latter being elevated a little above the road itself. The theory of the appellee is that the electric car was thirty meters or more away when the automobile appeared in plain view on the tracks. Such a theory is absolutely inconsistent with a speed of the car up to thirty miles an hour, inasmuch as a machine going at a man's pace will have crossed the track before the electric car has gone the intervening thirty meters. The indications of the evidence are that the machine, if anything, was going more rapidly. It was incumbent, moreover, on appellee to show

at the trial that the automobile, then thirty meters away from the electric car, going steadily, could not cross the rails in safety.

The witnesses who say that the car was thirty meters away are unreliable in this regard.   An excerpt from Missouri is applicable here:

"An argument is built upon the estimates of witnesses as to the distance the car was from the horse when he got on the north track and the distance in which it was possible to have stopped the car after the motorman saw the horse on that track, and the conclusion is drawn that the car was twenty or twenty-five feet distant, and could have been stopped in fifteen feet.   No witnesses measured any distance, and no one pretended to speak with precision; under the excitement and confusion of the occurrences the so-called estimates were little, if any, better than guesses.   So far as the plaintiff's estimate of the distance is concerned, she showed by her answers, when she was asked as to the distance she could see when elevated on the seat of the open wagon, that her faculty in measuring distances by the eye was not great."   *Markowitz* v. *Metropolitan Ry. Co.*, 69 L. R. A. 392.

Both the plaintiffs were under such excitement that their estimates were worth little.   The witness Merced who testified that from the car he saw the automobile at thirty meters is unreliable also, for the reason, namely, that he must have mistaken the distance.

As for Tapia, it is difficult to place his testimony or his position at the time of the accident.   Appellee maintains that this witness warned the trolley.   At the time, Tapia says, he was running behind the automobile, and he varies from ten to thirty meters as to the distance of the electric car.   That his voice could have been heard was improbable, and there was no evidence that it was heard or when heard that the car could stop.   One thing is fairly evident, however.   If he was running behind the automobile when it was in peril there was little chance of the automobile proceeding solely at a man's pace.

The court in its opinion mentions warnings, but does not refer to the witnesses who gave them. The only other witness as to warning is Rodríguez, who says he attempted to warn the automobile. The complainants say they saw men making signs and probably he was one of them. He is one of the defendant's witnesses, but he gives what to us seems an accurate version of the happening. He saw the electric car coming and realized that a collision would occur if the automobile did not stop. It was instantaneous, he said. The whole testimony conveys to our minds that this automobile was suddenly introduced on the car track and that the car was so close that it could not stop in time to avoid the accident.

The defendant admitted or conceded that the electric car could under the conditions be stopped within thirty meters. There was no proof that the car could be stopped at a shorter distance. Hence, if the car was going faster even than thirty miles an hour, of which there is no proof, there is less opportunity for the application of the doctrine of last clear chance. And, similarly, if the distance to be covered was smaller.

Appellant maintains that there is only one witness who testifies positively as to speed, and he says fifteen miles an hour. The principal witness who testified as to speed was Merced. He said that at Stop 30 the motorman put the switch at five points and almost immediately turned it to nine points. We cannot take judicial notice of what this means. Even supposing it meant the maximum speed, we have no idea what that maximum would be for this particular car. The witness was seated and did not give his source of knowledge. All the other testimony is to the effect that the car was going rapidly. We do not find any proof that the car was going at such an excessive speed as to constitute negligence under the circumstances.

If negligence of the defendant be assumed, it was clear and undisputed that the chauffeur was guilty of contributory

negligence in not stopping to look and listen. See among numerous authorities *Markowitz* v. *Metropolitan Ry. Co.*, 69 L. R. A. 392, *supra.* To stop, look, and listen is a duty that falls upon a driver of a vehicle who wants to cross a street railway whose cars are propelled by electricity. Could this negligence be imputed to the complainant? There are cases that hold that where a joint enterprise exists all are responsible with any one. This was a joint enterprise, all going to look for coconuts. In any event we think that the action of these ladies in going out with this young boy without a license was one which contributed to the accident. It is unnecessary to spend a great amount of time on problems of contributory negligence as we find no satisfactory proof of the negligence of defendant.

From the view we take of the nature of the case, it is idle to send it back for a new trial and in reversing the judgment the complaint should be dismissed.

The judgment must be

*Reversed.*

Justices del Toro, Aldrey and Hutchison concurred.

Mr. Chief Justice Hernández took no part in the decision of this case.