Morales, Demandante y Apelada, *v.* P. R. Railway, Light
& Power Co., Demandada y Apelante.

Apelación procedente de la Corte de Distrito de San Juan,
Sección Primera, en pleito sobre daños y perjuicios.

No. 1974.—Resuelto en julio 28, 1919.

Daños y Perjuicios — Negligencia — Velocidad — Zona Urbana — Zona Inter-
Urbana.—No hay regla alguna legal por la cual sea negligencia *per se* el
que una compañía de tranvías corra sus tranvías a velocidad en una zona
sub-urbana, y la jurisprudencia tiene una tendencia contraria. La conclu-
sión a que llegan las autoridades es que aunque la compañía de tranvías
debe ejercer gran cuidado en la velocidad de sus tranvías dentro de la
zona urbana, en las zonas inter-urbanas o rústicas el tranvía es más bien
semejante a un ferrocarril, y la regla es que una persona que reclama daños
por un accidente ocurrido en esas zonas, debe demostrar que la velocidad
era irrazonable dentro de las circunstancias.

Id.—Id.—Precaución de Viandantes—Pasos a Nivel.—El pararse, mirar y oir
es un deber que recae sobre el que guía un vehículo cuando va a cruzar una
vía de ferrocarril cuyos tranvías funcionan por medio de electricidad, y en
el caso de que el vehículo esté ocupado por varias personas, este deber se
extiende a todos los ocupantes del mismo.

Los hechos están expresados en la opinión.
Abogado de la apelante: Sr. J. H. Brown.

Abogados de la apelada: *Sres. Juan B. Soto* y *Luis Vizcarrondo.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Se ha admitido que los hechos en esta apelación dejando a un lado la cuestión referente a la naturaleza de los daños y perjuicios ocasionados, son idénticos a los del caso No. 1949, seguido por Josefa Rosario contra la misma demandada. El juicio de estos casos se celebró conjuntamente en la Corte de Distrito de San Juan y las supuestas causas de acción se originaron por el mismo accidente. Cada una de las demandantes obtuvo sentencia a su favor habiendo la demandada interpuesto recurso de apelación.

Josefa Rosario que residía en Río Piedras era dueña de un cerdo que ella dejó en una finca que se encuentra en o cerca de la parada 32 de la carretera entre San Juan y Río Piedras. Ella deseaba ver el cerdo y Juana Morales quería ir con ella a buscar cocos. En el garage de su casa había un automóvil perteneciente a Martínez Reyes quien había dado permiso a estas señoras para usarlo. Sentado en el automóvil en el momento de la expedición se encontraba un joven, Francisco Sandalio Peroza que a lo sumo tenía diez y seis años de edad. El había guiado en algunas ocasiones el automóvil donde iba sentado y era amigo de algunos de los hijos de una u otra de las familias de las dos señoras. Estas le pidieron a Sandalio Peroza que fuera can ellas en la expedición, a lo que accedió gustosamente. El no tenía licencia como *chauffeur* y su experiencia en asuntos de automóviles se limitaba principalmente a guiar éstos entre Río Piedras y Caguas. No tenía práctica en las calles de una ciudad o por el sitio donde corren los carros eléctricos. Sandalio no había sido contratado para la excursión sino que fué por invitación como también la cuñada de Juana Morales y dos de los hijos de esta última. Los excursionistas partieron hacia la parada 32, entraron en la finca al sur de la carretera, vieron el cerdo, recogieron cocos, todo

esto dentro del término de media hora y entonces regresaron. Al cruzar la vía del carro eléctrico que está frente a la finca uno de los carros de la demandada chocó con el automóvil, lo volcó y tiró en una cuneta y las dos señoras recibieron contusiones.

La teoría de la corte como revela su opinión era la de que el carro eléctrico iba a su máxima velocidad y que dicha velocidad constituía negligencia en el sitio en que precisamente ocurrió el accidente dado el número de entradas y salidas de las diferentes fincas que allí hay. Se ha probado y admitido que el lugar donde ocurrió el accidente es un suburbio. No conocemos ningún principio de ley por el que se establezca que constituye negligencia *per se* que una compañía de carros eléctricos corra sus carros rápidamente en tal distrito. Las decisiones muestran lo contrario. *Olavarría* v. *Porto Rico Railway Light & P. Co.,* 26 D. P. R. 645; *Robinson* v. *Rockland T. & C. St. Ry. Co.,* 58 A. 57; *Wosika* v. *St. Paul Ry. Co.,* 83 N. W. 386; *Thompson* v. *Citizens' St. Ry. Co.,* 53 N. E. 462, 152 Ind. 461; *McKennan* v. *Omaha & C. B. St. R. Co.,* 149 N. W. 829; *Cable* v. *Spokane & I. E. R. Co.,* 23 L. R. A. (N. S.) 1227.

El resumen de las autoridades se muestra en el sentido de que las compañías de trenes deben ser excesivamente cuidadosas con la velocidad que han de emplear dentro de una zona urbana, pero que en las afueras de la población, o tráfico por el campo, dichas compañías funcionan más bien como un ferrocarril. La apelante hace un resumen razonable de este principio diciendo que la demandante debe probar que dentro de las circunstancias la velocidad era excesiva.

La apelada, sin embargo, no se basa principalmente en la teoría expresamente sentada por la corte sino que invoca la doctrina de "la última oportunidad de no causar daño." (*last clear chance*). El artículo 1803 del Código Civil prescribe lo siguiente:

"El que por acción u omisión causa daño a otro interviniendo culpa o negligencia, está obligado a reparar el daño causado."

Y de acuerdo con dicho artículo esa doctrina en una u otra de sus formas es aplicable. Lo hemos dicho eso en el caso de *Vargas* v. *Monroig,* 15 D. P. R. 27. Dejaremos para el caso particular que se presente la cuestión de hasta dónde alcanza dicha doctrina. Asumiendo, sin embargo, que un demandado es culpable porque teniendo la oportunidad de ver el peligro en que se encuentra un hombre que está en la vía deja de tomar la debida o posible precaución, nos sentimos todavía obligados a declarar que la preponderancia de la prueba en el juicio no demuestra que exista tal deber por parte de esta demandada. Seguiremos a la apelante en la demostración que hace de los hechos físicos. Como cuestión preliminar puede decirse que todos los testigos convienen sustancialmente en que el automóvil al salir de la finca nunca se detuvo. Para llegar a la carretera del callejón de donde venía el automóvil, es necesario atravesar una especie de puentecito que está inclinado ligeramente hacia ambos lados de la vía que se encuentra algo elevada sobre el camino mismo. La teoría de la apelada es que el carro eléctrico estaba a unos treinta metros o más de distancia cuando el automóvil se encontraba a la vista en la vía. Tal teoría es absolutamente incompatible con la velocidad del carro hasta treinta millas por hora puesto que una máquina que marcha al paso de un hombre habría atravesado la vía antes de que el carro eléctrico haya recorrido los treinta metros que median. La prueba indica que la máquina en tal caso iba más rápidamente. Sin embargo incumbía a la apelada demostrar en el juicio que el automóvil que entonces se encontraba a unos treinta metros de distancia del carro eléctrico, marchando regularmente no podía cruzar la vía sin graves consecuencias. Los testigos que dicen que el carro estaba a unos treinta metros de distancia no merecen mucho crédito en cuanto al particular. Es de aplicación al caso la siguiente cita de Missouri:

"Se levanta el argumento basado en la apreciación hecha por los testigos respecto a la distancia en que se encontraba el carro de el

caballo cuando éste llegó a la parte norte de la vía y la distancia
en que era posible haber parado el carro después de haber visto el
motorista al caballo en esa vía, y se llega a la conclusión de que el
carro estaba a veinte o veinte y cinco pies de distancia y que pudo
haber sido parado a quince pies.   Ninguno de los testigos midió la
distancia ni pretendió hablar con precisión; bajo la excitación y
confusión por los sucesos, la supuesta apreciación hecha por los tes-
tigos era de poco valor y más bien suposiciones.   En lo que respecta
a la apreciación de la demandante en cuanto a la distancia demos-
tró ella por sus contestaciones al preguntársele sobre la distancia a
que podía ver, sentada como estaba en lo alto del vagón, que sus fa-
cultades para medir distancias con la vista no eran grandes.'' *Mark-
owitz* v. *Metropolitan Ry. Co.*, 69 L. R. A. 392.

Ambas demandantes estaban bajo tal estado de excita-
ción que sus apreciaciones eran de poco valor.   El testigo
Merced que declaró que desde el carro vió el automóvil a
treinta metros, no merece crédito también por la razón de
que debió haber equivocado la distancia.

En cuanto a Tapia, se hace difícil fijar su declaración o
situación en el momento del accidente.   Sostiene la apelada
que este testigo dió aviso al carro eléctrico.   Dice Tapia que
al ocurrir el accidente él iba corriendo detrás del automóvil,
y varía de diez a treinta metros en cuanto a la distancia
del carro eléctrico.   Es improbable que su voz pudiera ha-
berse oído y no hubo prueba de que se oyó o de que cuando
se oyó el carro podía parar.   Una cosa es razonablemente
cierta, sin embargo.   Si él corría detrás del automóvil cuando
estaba en peligro había poca oportunidad de que el automó-
vil fuera únicamente al paso de un hombre.

La corte en su opinión hace mención de avisos pero no
se refiere a los testigos que los dieron.   El único otro tes-
tigo en relación con este aviso es Rodríguez que dice que
trató de avisar al automóvil.   Dicen las demandantes que
vieron a unos hombres haciendo señas y que probablemente
él era uno de ellos.   El es uno de los testigos de la deman-
dada y suministra lo que a nuestro juicio es un relato exacto
del accidente.   Vió al carro eléctrico que venía y llegó a la

conclusión de que ocurriría un choque si el automóvil no paraba. Fué una cosa instantánea dijo él. Toda la prueba nos lleva a la conclusión de que este automóvil penetró repentinamente en la vía del carro eléctrico y de que el carro no pudo parar a tiempo para evitar el accidente. La demandada admitió o estuvo conforme en que el carro eléctrico dentro de las condiciones del suceso pudo haber sido parado a una distancia dentro de treinta metros. No hubo prueba de que el carro podía pararse a una distancia más corta. Por tanto, si el carro iba a una velocidad de más de treinta millas por hora, de lo cual no existe prueba, existe menos razón para que pueda aplicarse la doctrina de "la última oportunidad de no causar daño". Y asimismo si la distancia por recorrer era menor.

Sostiene la apelante que sólo hay un testigo que declara positivamente en cuanto a la velocidad y dice que era de quince millas por hora. El testigo principal que declaró acerca de la velocidad fué Merced. Dijo que en la parada treinta el motorista puso el *"switch"* a cinco puntos y casi inmediatamente lo cambio a nueve puntos. No podemos tomar conocimiento judicial de lo que esto significa. Aun suponiendo que significaba el máximum de la velocidad no tenemos idea de cuál sería ese máximum de este carro en particular. El testigo estaba sentado y no dió a conocer la fuente de su información. Todas las otras pruebas son en el sentido de que el carro iba rápidamente. No encontramos prueba alguna de que el carro iba a una velocidad tan excesiva que constituyera negligencia dentro de las circunstancias del caso.

De asumirse que la demandada fué negligente, resultó claro y de modo que no da lugar a discusión alguna que el *chauffeur* fué culpable de negligencia contributoria al no parar el automóvil para ver o escuchar si venía el carro. Véanse entre las numerosas autoridades el caso de *Markowitz* v. *Metropolitan Ry. Co.,* 69 L. R. A. 392, *supra.* Todo conductor de un vehículo que desea atravesar la vía de un tren

cuyos carros son movidos por electricidad tiene el deber de pararse, observar y escuchar. ¿Podría ser imputada esta negligencia a la demandante? Hay casos que sostienen que cuando existe un propósito común todos son responsables entre sí. Esta era una empresa común, todos iban a buscar cocos. De cualquier modo creemos que el proceder de estas señoras saliendo con este jovencito que no tenía licencia para guiar automóviles fué un acto que contribuyó al accidente. No es necesario emplear más tiempo sobre problemas de negligencia contributoria puesto que no encontramos pruebas satisfactorias de negligencia por parte de la demandada.

Según la consideración que hacemos de la naturaleza del caso estaría demás que lo devolviéramos a la corte inferior para la celebración de un nuevo juicio, y al revocar la sentencia debe desestimarse la demanda.

La sentencia apelada debe ser revocada.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados del Toro, Aldrey y Hutchison.

El Juez Presidente Sr. Hernández no tomó parte en la resolución de este caso.