## Huff v. Chicago, Indianapolis and Louisville Railway Company.

[No. 3,055. Filed April 6, 1900.]

RAILROADS.—*Speed of Train in Violation of City Ordinance.—Failure to Give Signals.—Negligence.—Wilfulness.*—The negligent acts of a locomotive engineer in running his engine at a higher rate of speed than that allowed by an ordinance of a city, and in his failing to give the required signals in approaching a crossing, do not of themselves constitute wilfulness. *p. 496.*

Huff *v.* Chicago, etc., R. Co.

RAILROADS.—*Wilfulness of Employes.*—Before wilfulness can be attributed to servants or employes in the operation of a train of cars, facts should be averred and proved that would charge them with knowledge, actual or imputed, of impending danger.  *p. 499.*

From the Lawrence Circuit Court.  *Affirmed.*

*M. F. Dunn* and *G. O. Iseminger,* for appellant.
*E. C. Field* and *W. S. Kinnan,* for appellee.

WILEY, C. J.—The only question presented by the record is the action of the court in rendering judgment for appellee upon the answers to interrogatories notwithstanding the general verdict.  Appellant was plaintiff, and brought his action to recover damages for the killing of his son.  The complaint is in two paragraphs, but, as is shown by an answer to an interrogatory, the verdict of the jury rested upon the second paragraph.  The first paragraph alleged a negligent killing, while the second charged the acts complained of as being done wilfully and wantonly.  As we are only asked to review the action of the court in rendering judgment in favor of appellee upon the answers to interrogatories, a very brief statement of the facts charged in the second paragraph of complaint will suffice.

It is averred that appellee's track crosses Seventeenth street in the city of Bedford; that said street crossing was much used, frequented, and traveled by pedestrians and teams; that the train that killed appellant's son was approaching the crossing from the south; that south of the crossing there was an acute curve in the track; that from the direction from which the train was coming, the view was obstructed by buildings, etc., and that the noise of an approaching train could only be heard for a short distance from the crossing; that the train was running at the rate of thirty miles per hour; that there was "no man on the lookout" to ring the bell and sound the whistle; that there was no headlight burning on the locomotive; that the city ordinance required the ringing of the bell, sounding of the whistle, and limited the speed of trains to eight miles

per hour. It is averred that the accident occurred at 5:30 p. m. of November 22, 1897, and that the obstructions at the crossing were such that the decedent could neither hear nor see the approaching train; also, that appellee's servants in charge of the locomotive did not ring the bell or sound the whistle; that these acts of the servants were acts of wilfulness, and that said servants "purposely, wantonly, and wilfully run said locomotive engine and permitted it to run onto, upon, and against plaintiff's decedent, * * * with great force and violence, * * * mangling and mortally wounding him," etc. The issues were joined by an answer in denial.

The facts found specially by the jury are, in substance, as follows: That the crossing where the accident occurred was "much used and frequented by the public"; that there was nothing to prevent the engineer from seeing appellant's son but darkness; that the engineer nor any other person was on the "lookout"; that the engineer did not see the decedent before the engine struck him; that the engine was running fifteen miles an hour; that the rate of speed was in violation of an ordinance of the city of Bedford; that the engineer could have seen decedent thirty feet from the cab of the engine; that, after coming within seeing distance of decedent, the engineer could not have checked the engine so as to avoid the injury; that decedent was struck on the north side of the Seventeenth street crossing; that decedent was killed while on appellee's track for the purpose of walking southward on said track to his home; that the bell was not rung nor the whistle sounded before the engine reached the crossing; that the headlight was not burning; that appellee's track south of the crossing is not straight.

It is charged in the second paragraph that the obstructions at and near the crossing were such that the decedent could neither hear nor see the approaching train. The jury disposed of this allegation by its answers to the following interrogatories: (14) "From a point twenty feet east of defendant's track on the north side of Seventeenth street, was

there any obstruction between said point and the track to prevent a person from seeing to the southward along said track for about 750 feet?" A. "No." (15) "From a point twenty feet east of defendant's railroad track on the north side of Seventeenth street, and from said point up to the track, was there any obstruction to prevent a person from seeing to the southward along said track for a distance of about 600 feet?" A. "No." (16) "Did the decedent approach said track from the east thereof?" A. "Yes." (18) "If the decedent had looked southward in the direction of the approaching train, could he have seen it approaching 600 feet southward from said crossing from any point east of its track within a distance of twenty feet?" A. "He could in daylight." (21) "If the decedent had looked in the direction of the approaching engine, how far could he have seen said engine to the southward of said crossing when he was fifteen feet from said crossing?" A. "About 100 feet." (24) "If the decedent had looked in the direction of the approaching engine before he entered upon the track, could he have seen it?" A. "Yes." (29) "From a point fifteen feet east of defendant's track at said street crossing, and while the decedent was walking from said point to the track, could he have heard the noise made by the approaching engine if he had listened attentively for the purpose?" A. "Yes." As to whether appellant's son looked and listened for an approaching train, as to whether there was any noise in the vicinity to keep him from hearing, and as to his familiarity with the crossing, are disposed of by the following interrogatories and answers: (32) "Is there any evidence that the decedent looked in the direction of the approaching engine for the purpose of ascertaining if a train or engine was coming at any time before he entered upon said track?" A. "No." (34) "Was there any loud noise in the vicinity of said crossing to prevent a person from hearing the approach of said train, if he had listened attentively for that purpose when the decedent was approaching said

crossing?"  A.  "No."  (46)  "Was the decedent familiar
with said crossing, and had he been familiar with said cross-
ing for several years?"  A.  "Yes."  The jury further found
that the engineer in charge of the engine did not know that
decedent was on the track or in dangerous proximity thereto
before he was killed, and that he was within four days of
being nineteen years old.  Upon these facts, we are asked
to declare that appellant's son was wantonly and wilfully
killed by appellee's servants while operating the locomotive
engine.

In an extended brief, counsel for appellant have called
our attention to but one case, *Parker* v. *Pennsylvania Co.,*
134 Ind. 673, 23 L. R. A. 552, to support their conten-
tion, and that case, as we shall show later in the opin-
ion, is directly contrary to the theory upon which it is sought
to hold appellee liable.  The controlling question in this
case is this:  If a locomotive engineer, in operating his
engine upon a railroad track runs it at a higher rate of speed
than that allowed by an ordinance of a city, and if he neg-
lects his duty in giving the required signals, by failing to
ring the bell and sound the whistle, do such acts of negli-
gence constitute wilfulness or wantonness?  As to what con-
stitutes in law "wilfulness", as applied to the character of
the acts here complained of, is no longer a matter of doubt
or speculation, for its exact meaning has often been defined
by the courts.  In the case of *Dull* v. *Cleveland, etc., R. Co.,*
21 Ind. App. 571, the question was under discussion, and
many authorities cited.  It was there held, in harmony with
the authorities, that "wilful" means obstinately, stubbornly,
with design, and with a set purpose.  "Wilfulness" arises
from the spontaneous action of the will, and can not exist
without purpose or design.  A wilful act is one committed
with an evil intent.  Any extended discussion as to what
will constitute wilfulness is unnecessary, and we content our-
selves by referring to the case last above cited and the
authorities cited therein.  See also *Miller* v. *Miller,* 17 Ind.

App. 605. It is here sought to impute wilfulness to the acts of appellee's servants in operating the locomotive engine in the absence of any fact indicating a purpose or intent on their part to inflict the injury resulting in the death of appellant's son, and in the face of the affirmative fact that the engineer in charge of the engine did not know that the injured party was on the track or in dangerous proximity thereto. In our judgment, the facts specially found do not show a wilful killing, nor can such wilful killing be reasonably inferred therefrom. This conclusion is amply supported by the authorities.

In the case of *Sherfey* v. *Evansville, etc., R. Co.*, 121 Ind. 427, appellant's decedent was killed by appellee's train of cars while walking upon a street. It was alleged that the killing was unlawful and wilful, and the acts complained of as constituting wilfulness were that appellee's servants were running the train through a city at a high and dangerous rate of speed, and by increasing its speed as it approached the decedent, without ringing the bell, in violation of a city ordinance, etc. It is stated by the court in the opinion that there was no averment in the complaint that the appellee or its servants knew decedent was upon the track or street. The court, by Olds, J., said: "The words 'wilful', 'careless,' and 'unlawful' are made use of, but the specific acts charged are the running of the train at a high and dangerous rate of speed without ringing the bell, in violation of a city ordinance. No facts or circumstances are averred from which it can be said the defendant had knowledge that the decedent was upon the track, or that the circumstances or use of the street was such as the act of running the train in the manner charged constituted a reckless disregard of human life, or that injury would even probably result to some person by such acts of negligence." True, what the court there said had reference to the complaint, and the distinction was made between negligence and wil-

fulness. It was held that, while the complaint showed actionable negligence, it did not show an aggressive wrong within the meaning of the term "wilful", and hence did not charge a wilful killing. *Parker* v. *Pennsylvania Co.*, 134 Ind. 673, is in point. There decedent was killed while passing through a narrow archway built by the railroad on its own grounds. This archway was used for passing trains through, and on account of its narrowness it was exceedingly dangerous for a person to pass through while a train was being moved through it. There was no averment in the complaint that the engineer or other servant of the company knew the decedent was in the archway at the time. There were four paragraphs of complaint, the first and third of which counted upon a negligent killing, while the second and fourth charged a wilful killing. Among other things, it was averred that appellee knew that persons were in the habit of passing through the archway, and that to run a car through the archway at great speed would endanger the lives of those who might be therein; that there was then an ordinance of the city (Columbus, Indiana), limiting the speed of cars to four miles per hour, and requiring that some one should proceed in advance of any car moved backwards within said city limits; that in disregard of the requirements of said ordinance and the situation, with its dangers, the appellee's servants caused an engine to push a box car into said archway at the speed of twelve miles per hour, unaccompanied by any person, without knowledge or warning to decedent, etc. Each paragraph contained substantially the same averments, except the first and third charged the acts to be careless and negligent, and averred that the decedent was without fault, while the second and fourth paragraphs characterized the acts as being wilfully done. In applying the law to the facts thus pleaded, the court said: "It is conceded by appellant's learned counsel that the specific facts alleged control in the construction of the complaint, and that the detached phrases, epithets, and conclusions can not pre-

vail against the facts so alleged. It is further conceded that the failure to observe the ordinance does not constitute wilfulness, and it is so held in *Sherfey* v. *Evansville, etc., R. Co.*, 121 Ind. 427." Continuing, the court said: "The exact point at issue is in the excessive speed of the car through the archway, a place of danger, without affirmative action for the protection of a possible trespasser. While conceding expressly that the same act upon an open switch would have been but negligence, it is argued that the archway gave to one therein no means of escape, and that a different rule should obtain, a rule whereby such negligence becomes an aggressive wrong. In the decision which we have quoted, the place of injury was a street crossing in a populous city, a place where the injured party was not a trespasser, but had a perfect right to go, and where the company was required to anticipate his presence. The crossing was alleged to be 'extra dangerous by the track being hidden from view for some distance by intervening buildings.' It was there held that the facts were 'in no wise different from those involved in the ordinary case, where a locomotive is run over a highway at a high rate of speed without giving the statutory signals. These are merely acts of non-feasance, not of aggressive wrong.' "

Before wilfulness can be attributed to servants or employes in the operation of a train of cars, facts should be averred and shown that would charge them with knowledge, actual or imputed, of impending danger, before any duty of the company arises to require of it affirmative acts or effort to avoid resulting injury. It is upon such knowledge that it is held to be the equivalent of wilfulness. *Parker* v. *Pennsylvania Co.*, 134 Ind. 678.

In *Louisville, etc., R. Co.* v. *Bryan*, 107 Ind. 51, Mitchell, J., said: "Where one person negligently comes into a situation of peril, before another can be held liable for an injury to him, it must appear that the latter had knowledge of his situation in time to have prevented the injury. Or it must

appear that the injurious act or omission was by design, and was such—considering time and place—as that its nature and probable consequence would be to produce serious hurt to some one. To constitute a wilful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is *quasi* criminal." *Louisville, etc., Co.* v. *Murphy,* 9 Bush. 522; *Louisville, etc., R. Co.* v. *Filbern,* 6 Bush. 574; *Peoria Bridge Assn.* v. *Loomis,* 20 Ill. 236. The above language of Judge. Mitchell is quoted with approval in *Parker* v. *Pennsylvania Co.,* 134 Ind. 673.

The rule is well settled that no purpose or design can be said to exist where the injurious act results from negligence, and negligence can not be of such a degree as to become wilfulness. See *Parker* v. *Pennsylvania Co., supra,* and authorities there cited.

In the case we are here considering, the facts charged in the second paragraph of complaint show the grossest negligence, but the mere fact that such acts are characterized as "wanton" and "wilful" do not make them such, when measured by the general facts alleged. While we are not considering the sufficiency of the complaint, we are considering the facts specially found, with the view of determining if they are sufficient to show wilfulness on the part of the servants of appellee, upon which a judgment for the injury complained of can rest. We are unable to find a case holding that such facts constitute wilfulness, and our attention has been called to none.

Judgment affirmed.