## CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* LINDSAY, ADMINISTRATRIX.

[No. 4,572. Filed March 11, 1904. Rehearing denied May 11, 1904. Transfer denied June 24, 1904.]

MASTER AND SERVANT.—*Death by Wrongful Act.— Complaint. — Defective Appliances.—Knowledge.*—A complaint, in an action against a railroad company for the death of a switchman, based upon the alleged negligence of the defendant in bringing into the train which decedent was ordered to assist in switching and placing upon a side-track a car negligently constructed, is insufficient, where it is not alleged that defendant had knowledge of the defect complained of and that decedent was ignorant thereof. *pp. 405–407.*

PLEADING.—*By Way of Recital.*—Facts must be directly averred, and not pleaded by way of recital. *p. 408.*

SAME.—*Master and Servant.—Personal Injuries.—Defective Appliances.—Notice.*—An allegation in a complaint in an action against a railroad company for the death of a switchman in coupling cars, that the "yards had been so carelessly and negligently left as to be broken and rotted by time" is sufficient to show notice of the condition of the yard on the part of the defendant. *pp. 408, 409.*

TRIAL.—*Instructions.—Record.*—Where the court by an instruction took from the jury the issue tendered by certain paragraphs of the complaint, and it is not disclosed by the record upon which paragraph the verdict was rendered, it can not be said that defendant was not harmed by the submission in the first instance. *pp. 409, 410.*

MASTER AND SERVANT.—*Death by Wrongful Act.— Negligence.— Pleading.*— A complaint, in an action against a railroad company for the death of a switchman, averring that it was the duty of the engineer to move the train in obedience to signals, and that after decedent had placed himself in a dangerous position the engineer carelessly caused the train to be moved rapidly, whereby decedent received his injury, is sufficient to withstand a demurrer. *pp. 410–412.*

APPEAL.—*Rehearing.*—A rehearing will not be granted for a cause not referred to in the original briefs. *p. 412.*

From Hendricks Circuit Court; *T. J. Cofer,* Judge.

Action by Leonia Lindsay, administratrix of the estate of Howard Lindsay, deceased, against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*B. K. Elliott, W. F. Elliott, F. L. Littleton* and *J. T. Dye,* for appellant.

*W. V. Rooker,* for appellee.

COMSTOCK, J.—Appellee brought this action as administratrix of the estate of Howard Lindsay, deceased, against appellant, to recover damages for the death of appellee's decedent, occasioned by the alleged negligence of appellant. The cause was tried upon an amended complaint in five paragraphs, to each of which a general denial was filed. The trial resulted in a verdict and judgment for appellee in the sum of $2,500.

The errors relied upon are the overruling of appellant's separate demurrers to each paragraph of the amended complaint, and the overruling of appellant's motion for a new trial.

Briefly summarized, the negligence attempted to be charged in the respective paragraphs of amended complaint is as follows: In the first: Bringing into the train upon which the plaintiff's intestate was to work a car with a wrong and defectively constructed coupling apparatus. In the second: That the engineer in charge of the engine attached to the train upon which the plaintiff's intestate was to work negligently disregarded signals, and ran the train at a negligent, careless, and wrongful rate of speed. In the third: That the coupling apparatus upon a car upon which the plaintiff's intestate was required to work was so out of repair as to require the plaintiff's decedent to go between cars to uncouple them when running at a great rate of speed, thereby causing his death. In the fourth: That the yards of the defendant, where the plaintiff's intestate was required to work, had been left broken

and rotted and uneven, so as to render the place where he was required to work dangerous and unsafe. In the fifth: That the engineer moved the train, on which the plaintiff's intestate was to work, in disobedience of signals.

The first paragraph of the amended complaint, omitting the formal parts, is as follows: "That on the 21st day of January, 1898, plaintiff's decedent was in the employ of defendant as switchman, in the yards of the defendant, east of and adjacent to the city of Indianapolis, and as such switchman was engaged in the discharge of the duties appertaining to his position, and in the performance of duties imposed upon him by those in charge and having authority over him, acting for and in behalf of said defendant; that on said date he was directed by those in authority, acting for and in behalf of said defendant, to throw the switches along the tracks of said defendant, and cut off and switch cars in a train of said defendant, at the time being operated along the tracks and switch of said defendant; that the train consisted of an engine and numerous freight-cars, brought to the point of work by employes of defendant having charge thereof, and acting for and in behalf of defendant; that, among the cars of said train, being so handled, there was one so defectively constructed and negligently brought into said train as to endanger the limbs and lives of those called upon to handle it in this, to wit: That the brake extended over and beyond the end of the car, and the lever upon the outside end of said car for operating the coupler had been placed in its construction or repair upon the wrong side of the car, and no lever or other thing for use as such had been placed on the side that should have had a lever; that the chain for upholding the link of said coupler was broken, and the lug of said pin was worn out and would not support said pin, of which fact plaintiff's decedent had no knowledge; that in the performance of his duties, and while said train was moving at a rapid rate of speed,

plaintiff's decedent was required to separate the defective car as aforesaid from the car attached to it, and by reason of said careless and negligent construction, and said careless and negligent placing of said car entrain, plaintiff's decedent was compelled to go between said cars, and was crushed and mangled so that he died from the effects thereof."

Various objections are made to this paragraph; among others, that it does not allege that the decedent did not know that the lever was on the wrong side, and that it appears that the location of the lever caused him to go between the cars. The allegation as to the lever may be taken as showing the circumstances under which the decedent attempted to uncouple the cars. It does allege that he had no knowledge that the chain and pin were broken, but in this paragraph negligence is not attributed to that of which the decedent was ignorant. It is further pointed out that said paragraph does not allege the knowledge on the part of the employer. For these reasons the paragraph is bad. *Ohio Valley Coffin Co.* v. *Goble,* 28 Ind. App. 362; *Cleveland, etc., R. Co.* v. *Scott,* 29 Ind. App. 519; *Creamery, etc., Mfg. Co.* v. *Hotsenpiller,* 24 Ind. App. 122; *Atchison, etc., R. Co.* v. *Tindall,* 57 Kan. 719, 48 Pac. 12; *Evansville, etc., R. Co.* v. *Duel,* 134 Ind. 156.

The part of the second paragraph questioned by the demurrer is as follows: "That the engine, while manipulating such train, was in charge of an engineer of the defendant, acting for and in behalf of said defendant, and representing it in that capacity; and that said engineer, negligently and carelessly disregarding the signals given him, ran said train at such a negligent, careless, and wrongful speed along the tracks and switches of said defendant as to endanger the lives and limbs of those called upon to perform their duties in connection with the running of such train; that plaintiff's decedent was directed by those in

charge, acting for and in behalf of said company, to uncouple the cars of such train, and, while so attempting to do, the said engineer in charge of said train negligently and carelessly ran the same at such speed as to render the duty of plaintiff's decedent extra hazardous; and while plaintiff was in the act of making such uncoupling, he was, by reason of such high speed, and the negligent and careless acts of said engineer, caught, crushed, and mangled in such manner that he died from the effects thereof." It contains · no direct allegations that signals were disregarded, or that any signals were given, or that the engineer was bound to obey signals. The only allegations in this connection are by recital. Facts must be directly averred and not pleaded by way of recital. *Indiana, etc., R. Co.* v. *Adamson,* 114 Ind. 282; *Jackson School Tp.* v. *Farlow,* 75 Ind. 118; Bliss, Code Pl. (3d ed.), §318.

The third paragraph contains the following: "That among the cars of said train being so handled there was one so out of repair, carelessly and negligently brought into said train, as to endanger the lives of those called upon to handle it, in this, to wit: That the chain connecting the lever with the line of the coupling connections had been broken, of which fact plaintiff's decedent had no knowledge, and was useless; and, in order to move the brake pin and uncouple the cars, it was rendered necessary by reason of such defects, so carelessly and negligently permitted by defendant, for the switchman to go between the cars while being moved at a dangerous and unreasonable speed, and make such coupling; and, by reason of such defect, this plaintiff's decedent was caught between said cars, and so crushed and mangled that he died from the effects thereof." It is not alleged that the decedent did go between the cars, nor that he was caught between said cars; nor is it alleged that appellant had knowledge of the defects specified.

It is alleged in the fourth papagraph that "the yards of said defendant, at the place of the occurrence of the

accident hereinafter spoken of, had been so carelessly and negligently left as to be broken and rotted by time and the action of the elements, between and on the tracks of said defendant, as to render work to employes at all times hazardous, and especially at night; and that the flanges along the rails of defendant's tracks had become loose, uneven, and broken in such manner as to impede the movement of the employes required to work about the trains, and to render dangerous all coupling work about the point where the accident hereinafter complained of occurred, of which fact plaintiff's decedent had no notice or knowledge; that the plaintiff's decedent, in the performance of his duties, and while the train of the defendant was in action, was required to go between the cars of the defendant upon such uneven and broken ground, and across the tracks of the defendant, where the flanges were loose and unsafe to step upon or about, and that while there between such cars, in performance of his duties, he was caught; and the insecure and rotten footing and loose flanges so impeded and obstructed his movements as to prevent his escape, and threw him under said cars, whereby he was crushed and mangled, so that he died from the effects thereof. It is urged against this paragraph that it does not allege that the defective condition of the yards was known to the defendant, or had existed for a sufficient length of time to charge it with knowledge thereof. The allegation that the yard had been carelessly and negligently left as to be broken and rotted by time is sufficient to meet this objection. *City of Huntington* v. *Burke,* 21 Ind. App. 655.

Appellee calls attention to instruction five and one-half, given at the request of appellant, and claims that by this instruction the court took from the jury the issue, tendered by the first and third paragraphs of the complaint, respecting a defect in the coupling; that, the submission of the issues tendered by these paragraphs having been withdrawn from the jury, the appellant was not injured by the submis-

sion in the first instance. The instruction referred to is as follows: "There is no evidence that the B. & O. car, as the witnesses have designated it, was not in good repair when the plaintiff's intestate, Howard Lindsay, was injured. The uncontradicted evidence is that it was in good repair and proper condition, but that the coupling lever was on a different side of the car from which levers were generally placed on cars. Such evidence is not sufficient to show that the defendant was guilty of negligence in receiving such car, or in placing the same in one of its trains or cuts of cars." Said instruction only informed the jury that the coupling lever on said car was on a different side of the car from which levers were generally placed on cars, and that such evidence was not sufficient to show negligence on the part of the defendant in receiving such car or placing the same in one of its trains.

Other allegations in said paragraphs are not referred to in the instructions. Besides, in an instruction given at the request of appellee, reference is made to a defective coupling on a car which the defendant received from a connecting line. The record does not show upon which paragraph of the complaint the verdict was rendered.

The fifth paragraph contains the following: "That on the 21st day of January, 1898, plaintiff's decedent was in the employ of defendant as switchman in the yards of defendant, east of and adjacent to the city of Indianapolis, and as such switchman was engaged in the discharge of the duties appertaining to his position, and in the performance of the duties imposed upon him by those in charge and having authority over him, acting for and in the behalf of said defendant; that on said date he was directed by those in authority, acting for and in behalf of defendant, to throw the switches along the tracks of said defendant, and cut off and switch cars in a train of said defendant at the time being operated along the tracks and switch of defend-

ant; that such train consisted of an engine and numerous freight-cars, brought to the point of work by employes of defendant having charge thereof, and acting for and in behalf of defendant; that the engine hauling such train was in charge of and under control of an engineer who was at the time acting for and in the behalf of such defendant, and that it was the duty of said engineer to move such train obedient to the signals of the switchman, whose duty it was to uncouple cars in such train; that on the night in question, it being exceedingly dark, such signals were given by a lantern, and plaintiff's decedent was doing the switching and giving such signals according to the direction of the rules of the defendant; that, while it was exceedingly dark, plaintiff's decedent, by signal, notified the engineer to close up the slack in said train, so that he could uncouple cars, and, having so notified him, passed in between the cars to draw the coupling-pin, and said engineer negligently and carelessly, without further notice or signal, caused said train to pass rapidly along such track and around the curve thereon, whereby plaintiff's decedent was caught between said cars and crushed and mangled in such a manner that he died from the effects thereof."

The objection made to this paragraph is that it does not allege what the rules were, nor in any manner attempt to describe any of the signals, or allege what signal was or was not necessary for any particular movement of the train; that no negligence is shown or charged except such as appears from the use of the words "negligently and carelessly"; that it does not allege the signal given was disregarded, or that any signal was necessary or required. In short, it shows no breach of duty to the injured party. The paragraph charges a violation of duty in this: That the engineer was to move the train in obedience to signals, and that without notice or signal, after the appellee's decedent had placed himself in a dangerous position, he carelessly

caused the train to be moved rapidly, whereby the decedent received his injury. It is sufficient to withstand a demurrer.

It does not appear from the record upon which paragraph of the complaint the verdict was rendered. Therefore, without passing upon the motion for a new trial, the judgment is reversed, with instructions to sustain the demurrers to the first, second, and third paragraphs of the amended complaint.

## ON PETITION FOR REHEARING.

PER CURIAM.—A rehearing is asked in this cause upon a point not made nor referred to in the original briefs. Under rules twenty-two and twenty-three of this court it is not permitted to raise such alleged error.

Petition overruled.

ROBY, J.—The complaint was in five paragraphs. Separate demurrers to each of them were overruled, and the ruling was excepted to. The record entry made is as follows: "And the court, being sufficiently advised, now overrules the demurrer to the amended complaint herein, to which ruling of the court the defendant at the time excepts."

I concur in overruling the petition for a rehearing, and place my assent upon the ground that the exception taken is as broad as the ruling, and applies to each paragraph of the complaint. If it does not do so, the trial judge ought to have made five separate entries of his action, in order that appellant be enabled to preserve its rights by separate exceptions, all of which involves an absurdity, which I do not think the law requires.