CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY *v.* BARKER, ADMINISTRATRIX.

[No. 21,072. Filed January 17, 1908.]

1. APPEAL.—*Assignment of Errors.—Demurrer to "Complaint."— "Amended" Complaint on File.*—A demurrer to the "complaint," where an "amended" complaint is all the complaint that there is on file, raises the question of the sufficiency of the "amended" complaint. p. 674.

2. PLEADING. — *Complaint.—Master and Servant.—Negligence.— Railroads.—Conclusions.*—In a complaint for negligence, it is insufficient merely to allege that it was defendant's "duty" to do

certain things, the requirement being that the facts, from which the duty springs, must be affirmatively shown. pp. 675, 680, 688.

3. MASTER AND SERVANT.—*Duties.*—The master is under the continuing, non-delegable duty of using reasonable care in maintaining his works, ways and machinery in a safe condition. p. 676.

4. SAME.—*Fellow Servants.*—All persons engaged by the master in carrying on the common enterprise are fellow servants of each other. p. 676.

5. PLEADING.—*Complaint.—Master and Servant.—Railroads.—Negligence.—Leaving Switch Open.*—A complaint alleging that defendant railroad company negligently permitted its switch to become and remain open, thereby causing the death of the engineer of its freight-train, shows no negligence, since the handling of such switch is, of necessity, the work of a fellow servant, though done by defendant's highest officials. p. 677.

6. MASTER AND SERVANT.—*Railroads.—Actionable Negligence.*—Railroad companies are liable for the negligent performance of their duties in the construction, preparation and repair of their roads, but not for their negligence in the operation thereof. p. 678.

7. PLEADING.—*Complaint.—Railroads.—Switches.—Lights on "Dark and Foggy" Days.*—Allegations in a complaint showing that the day on which decedent was killed was cold, the air filled with flying frost and "by reason of the hazy condition of the weather it was impossible for [decedent] to see the open switch," are insufficient to show that the day was "dark and foggy," thereby requiring (§5256 Burns 1908, Acts 1901, p. 160, §1)· defendant to maintain a light at such switch. p. 679.

8. SAME. — *Complaint. — Allegations.—Recitals.*—Allegations in a complaint that defendant knew certain facts are mere recitals and are not allegations of facts. p. 680.

9. SAME.—*Demurrer.—What It Admits.*—A demurrer admits the truth of only those facts which are affirmatively alleged, and does not admit the truth of mere recitals. p. 680.

10. SAME.—*Complaint.—Railroads.—Double-Glass Cab Windows.*—A complaint alleging negligence because of defendant railroad company's negligent failure to furnish double-glass cab windows, thereby avoiding the frosting of the glass and obstruction of the view, must also show that the engineer used such window, that such negligence was the proximate cause of his injuries, and that he did not assume the risk thereof. p. 681.

11. SAME.—*Complaint.—Contradictions.*—Parties may allege contradictory facts in different paragraphs of a complaint, but not in the same paragraph. p. 684.

12. SAME.—*Complaint.—Railroads.—Switch Targets.*—A complaint relying upon defendant railroad company's negligence in failing to keep its switch target in proper condition must allege facts

showing that such condition was the proximate cause of the injuries complained of, and that, in the absence of such condition, the injury would not have occurred. p. 684.

13. MASTER AND SERVANT.—*Railroads.—Engineers.—Section Men.— Fellow Servants.*—A section foreman having charge of a switch is a fellow servant of an engineer; and for such foreman's negligence in leaving a switch open, thereby killing such engineer, the company is not liable. p. 684.

14. SAME.—*Railroads.—Fellow Servants.—Burden of Proof.— Prima facie* all who are employed in the same work are fellow servants; and the burden of proof is on the person denying same to prove the contrary. p. 684.

15. SAME. — *Vice-Principals. — Track Repairers. — Complaint.*—A track repairer on a railroad is not a vice-principal in keeping a switch in repair; and an allegation that such repairer was charged with the duty of keeping the same in repair cannot make it a master's duty. p. 685.

16. PLEADING.—*Complaint. — Railroads. — Negligence. — Contradictions.*—A complaint showing in the same paragraph that defendant railroad company negligently left a switch open and that the approaching engineer could not see the signal because of frost upon same, and which failed to show that his injuries would not have been received if the signal had been perfect, and which further showed that the engineer could not see such signal on account of the hazy condition of the atmosphere, fails to show that the condition of the signal caused the injuries. p. 685.

17. RAILROADS. — *Switch Targets. — Employers' Liability Act. —* Switch targets which work automatically with the turning of the switch are not "signals" within the meaning of the employers' liability act (§8017 Burns 1908, Acts 1893, p. 294, §1). p. 686.

18. PLEADING.—*Complaint.—Railroads.—Signals.—Obstructions to Agent's View.*—A complaint for injuries caused by defendant railroad company's negligence in placing its switch signal at a point where the station agent's view of same was obstructed, thereby permitting an engineer to run on the switch and be killed, is bad, where no distances are alleged and no allegations are made that such agent could have seen such signal but for such obstruction. p. 688.

19. SAME. —*Complaint.—Railroads.—Signals.—Duties.—Employers' Liability Act.*—A complaint under section one of the employers' liability act (§8017 Burns 1908, Acts 1893, p. 294) counting upon the negligence of a station agent in giving a signal that the track was clear and safe, when in fact the switch was open, must affirmatively allege how it became the duty of such agent to ascertain the condition of the switch—whether by rule, custom or contract. p. 688.

From Owen Circuit Court; *George W. Grubbs,* Special Judge.

Action by Dolly M. Barker, as administratrix of the estate of Albert S. Barker, deceased, against the Chicago, Indianapolis & Louisville Railway Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals.

Transferred from Appellate Court (See 40 Ind. App. 256) under §1399 Burns 1908, Acts 1901, p. 565, §15. *Reversed.*

*E. C. Field, H. R. Kurrie* and *I. H. Fowler,* for appellant.
*C. E. Thompson* and *Homer Elliott,* for appellee.

HADLEY, J.—Appellant owns and operates a railroad from Chicago to Louisville, through Indiana, and by way of Quincy, Owen county.

At Quincy there is a station-house on the west side and a switch on the east side of the main track. Four hundred fifty feet north of the station is the north connection of the switch with the main track. The switch is operated by a switch-stand located on the west side and about six feet from the west rail of the main track. The switch-stand is eight feet high, and has on top two wings, one painted red and the other white, which serve as targets to signify to approaching trainmen whether the switch is open or closed— the red, when standing at right angles with the main track, indicating danger, or an open switch, and the white, when standing at right angles with the main track, indicating safety, or a closed switch. In the opening or closing of the switch the wings of the stand work automatically, and when in repair cannot mislead. Between the switch-stand and the station-house a country highway crosses the railroad, and on the west side of the main track is a signboard to warn travelers on the highway. In the north end of the station-house is an observation window from which an unobstructed

view up the track northward may be had for a long distance. The company also maintains at the station-house a semaphore signal, which is twenty feet high and has on top two blades five feet long, six inches wide, painted white and in colors, and by which device the telegraph operator signals to approaching trainmen any orders he has to deliver, and whether or not the train should be stopped at the station. Said signal is under the care and management of the telegraph operator, who is also the station agent. In approaching Quincy from the north the track is on a heavy down grade. On December 30, 1902, the decedent, Barker, was in the employ of the appellant as a locomotive engineer, and as such had charge of a south-bound, through freight, the running time of which was scheduled at thirty miles an hour, and which, as the same approached Quincy, was running at that rate. There were loaded cars standing on the switch. The switch had been left open, and Barker's train took the siding, collided with the standing train, and he was killed in the wreck which followed. Dolly M. Barker, his widow, qualified as administratrix, and brought this action for the benefit of herself and children.

The foregoing facts are set forth in all the four paragraphs of complaint, to each of which paragraphs a demurrer for insufficiency of facts was overruled and the cause put at issue by the general denial. The case was submitted to a jury which returned a verdict for appellee. With the general verdict were also returned answers to a large number of interrogatories.

The record shows that the only demurrers filed by appellant were addressed to the several paragraphs of the "amended" complaint. These demurrers were overruled, to which rulings exceptions were reserved. In its assignment of errors in this court it is complained that the court below erred in overruling the several demurrers to the "complaint." Upon this showing it is contended by appellee that no ques-

tion is raised here on the sufficiency of the several paragraphs of the complaint, because the record shows that there was no demurrer filed, and no exceptions reserved to any such pleading. We think otherwise. It further appeared from the record that when the demurrers were presented the only complaint then, theretofore or thereafter on file was the complaint that now appears in the record. There was, and is, therefore, no possible chance for a mistake in the identity of the complaint demurred to. In this respect the record before us is radically different from the records in the cases cited by appellee. All the paragraphs of the complaint relate to the same injury.

Was the first paragraph sufficient? It is first alleged in this paragraph "that it was the duty of the defendant to keep the switch, appliances and mechanical devices attached as a part of the defendant's railroad in good repair, and safe for use by its employes, and that on the day aforesaid the defendant negligently suffered said switch to become, and remain, out of repair, and in an unsafe and dangerous condition in this, to wit: Said defendant, on said December 30, 1902, carelessly and negligently permitted said switch to become unlocked, and so turned open and adjusted as to cause the train on which said Barker was then and there performing his duties as engineer, and which was running at a high rate of speed, to pass from the main track onto the switch and collide with certain heavily-loaded cars standing thereon, whereby said train was wrecked and said Barker killed." All the default or negligence that resulted from leaving the switch open is charged directly against the defendant.

It is a well-established rule of pleading that a complaint for negligence against a railroad company must show by proper averments the violation of a duty owing to 2. the plaintiff by the company, or by some one else for whose particular acts the company is held, by statute, to be responsible. It is not sufficient to allege in general

terms that it was the duty of the defendant to do this, or to do that. Such an averment is the statement of a conclusion, not of a fact. *Pittsburgh, etc., R. Co.* v. *Peck* (1905), 165 Ind. 537, and cases cited. The general rule in such cases is that the pleader must distinctly set forth in his complaint the facts which he claims creates the duty that has been violated, and from the facts so stated the court will determine as a matter of law the existence or the nonexistence of the duty. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247; *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85, 102 Am. St. 185; *Cleveland, etc., R. Co.* v. *Parker* (1900), 154 Ind. 153; *Evansville, etc., R. Co.* v. *Duel* (1893), 134 Ind. 156; *Chicago, etc., R. Co.* v. *Fry* (1892), 131 Ind. 319; *Indiana, etc., R. Co.* v. *Dailey* (1887), 110 Ind. 75; *Lake Shore, etc., R. Co.* v. *Stupak* (1886), 108 Ind. 1; *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151; *South Bend, etc., Plow Co.* v. *Cissne* (1905), 35 Ind. App. 373; *Creamery, etc., Mfg. Co.* v. *Hotsenpiller* (1900), 24 Ind. App. 492.

The duties of master and servant are correlative. On the one hand it is the duty of the master to employ none but competent servants, to use due care in providing his

3.    servants with safe machines and appliances to work with, and to exercise reasonable care in keeping them in good repair; and to the end that they be kept in good repair he is required to make inspection at reasonably frequent intervals. These are duties that the master owes to his servants, the performance of which he cannot delegate to another so as to relieve himself from responsibility for their nonperformance or imperfect performance. 20 Am. and Eng. Ency. Law (2d ed.), 55, and cases cited.

On the other hand, the duty of operating the machine in all its details and departments is a duty the servant owes the master, and when any duty connected with oper-

4.    ating any part of the machine is delegated to another by the master, such person performing such duty is

a fellow servant of all others engaged by the master in carrying on the common enterprise. *Indianapolis, etc., Transit Co. v. Foreman, supra; Hodges v. Standard Wheel Co.* (1899), 152 Ind. 680; *Baltimore, etc., R. Co. v. Little* (1897), 149 Ind. 167; *Indianapolis, etc., Transit Co. v. Andis* (1904), 33 Ind. App. 625; *Cleveland, etc., R. Co. v. Brown* (1896), 73 Fed. 970, 20 C. C. A. 147; 2 Labatt, Master and Serv., p. 1726; *St. Louis, etc., R. Co. v. Needham* (1894), 63 Fed. 107, 11 C. C. A. 56, 25 L. R. A. 833.

In the last case it is said: ''The roadbed, ties, tracks, stations, rolling stock, and all the appurtenances of a well equipped railroad together constitute a great machine for transportation. It is the duty of the railroad company to use ordinary care to furnish a sound and reasonably safe machine, to use due diligence to keep it in proper repair, and to use ordinary care to employ reasonably competent servants to operate it; but, when this duty is performed, the duty rests upon the servant to operate it carefully.''

In the complaint under consideration it is not averred that the switch or any of its appliances was unsound, defective or out of repair. The negligence complained of was not in the construction, preparation or repair of the railroad, but in its operation. The switch, as a part of the railroad, was safe before it was made unsafe by some one, who in doing it was not imperfectly performing a duty of the master. The allegation is that the defendant negligently permitted such switch to become unlocked and opened, and so adjusted as to carry the decedent's train from the main track onto the siding. According to the averments the situation resulted from no defect in the switch, or any appurtenances by which it was operated. It was made to unlock, open and shift the continuity of the rails from the main track to the siding. So far as the averments show, the master, or defendant, had not failed in any particular to furnish the plaintiff's decedent with a safe place in which to work and safe instrumentalities to

work with, nor in any way failed to employ competent servants, nor to keep such place and instrumentalities inspected, and in good condition for the performance of all duties required of its employes.   As relates to the defendant company, the averments show affirmatively. that it had done all pertaining to the switch that the law requires of it. As was said in *Daves* v. *Southern Pac. Co.* (1893), 98 Cal. 19, 26, 32 Pac. 646: "It is the duty of the master to provide a suitable switch and competent servants for its operation; when he has done this his duty is at an end and his liability ceases.   The keeping of it in position and its use and operation is a duty belonging to the servant."   The averment that the "defendant" negligently permitted the switch to become and remain open adds no strength to the pleading.   Opening, closing and manipulating a switch in conducting the business of railroading is not a duty belonging to the master, and will not be held the master's act, even though performed by an officer of the highest rank. "There are certain duties which pertain to the position of master," says Mitchell, C. J., in *Indianapolis, etc., R. Co.* v. *Johnson* (1885), 102 Ind. 352, "and whoever performs them is, for the time being, in the master's place.   There is also certain work which pertains to the duty of employe or servant, and whoever else beside the master does this is, while so engaged, a fellow servant with any other employe who is in the same general employment."

The full test of liability is not the condition of the place, nor the machinery at the instant of the injury, but the character of the duty, the negligent performance of which

6.  caused the injury.   Was it a duty of construction, preparation or repair, or was it a duty of operation? *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247; *Miller* v. *Southern Pac. Co.* (1891), 20 Ore. 285, 26

Pac. 70. Under the foregoing rules the first ground of negligence is insufficient.

As a second ground it is averred that at the time of the accident the day was extremely cold, and the air filled with flying frost; that, by reason of the frost in the atmosphere and the hazy condition of the weather, it was impossible for said Barker to see and observe the defective and open condition of said switch until within a few feet of the same; that he was wholly ignorant of its condition until said engine left the track; that said switch-stand, by means of painted wings upon the top, was used to inform approaching trainmen whether said switch was open or closed; that on said day the defendant well knew the condition of the weather, and knew said day was dark and hazy, and that the air was filled with flying particles of frost, and that it was possible for Barker, as such engineer, to see but a short distance along the track ahead of his engine; that, under the circumstances, it was the duty of the defendant to maintain a signal-light upon said switch-stand to enable said decedent to determine, as he approached the same, whether said switch was open or closed; that if such light had been maintained the decedent would have observed the condition of the switch in time to put his train under control, and avoid the accident; that the defendant, disregarding its duties, then and there carelessly and negligently failed to place or maintain a signal-light of any kind upon said switch-stand.

The allegations in reference to the signal-light do not exclude the inference that the accident happened in the full light of day; and the averment that the day was extremely cold and the air filled with flying frost, and "by reason of the hazy condition of the weather it was impossible for Barker to see the open switch," is not a sufficient charge that the day was "dark and foggy," or that any other reason existed for maintaining a light on the switch in daytime. The

statute only requires the display of a light in the daytime when the day is "dark and foggy." §5256 Burns 1908, Acts 1901, p. 160, §1.

The mere allegation in the complaint that it was the duty of the defendant, under the circumstances, to maintain a light on the switch cannot be considered. The facts set forth must show the duty, if it exists. The statement that the defendant knew the day was dark and hazy and the atmosphere filled with flying particles, and that it was possible for Barker to see along the track but a short distance, are mere recitals, and not allegations of fact. A demurrer admits only such facts as are well pleaded. Facts merely recited are not well pleaded, and will not be considered in determining the sufficiency of a pleading, on demurrer. *Malott* v. *Sample* (1905), 164 Ind. 645; *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85, 102 Am. St. 185; *Jackson School Tp.* v. *Farlow* (1881), 75 Ind. 118; *Cleveland, etc., R. Co.* v. *Lindsay* (1904), 33 Ind. App. 404.

In *McElwaine-Richards Co.* v. *Wall* (1902), 159 Ind. 557, the complaint averred that the "defendant's" superintendent negligently ordered him to climb upon a plate or chord constituting a part of the building; that the plaintiff did not know how it was placed and held in position, and did not know how it should be held or fastened in position; that he did not know of the unsafe condition of said chord or plate, or that the same was not properly fastened in position; that the defendant and its superintendent knew at the time that said plate or chord was not fastened, and was unsafe to go upon. It was held that these statements were mere recitals, and could not be considered in determining the sufficiency of the complaint.

Likewise in *Lake Erie, etc., R. Co.* v. *Mikesell* (1899), 23 Ind. App. 395, the averments in the complaint were that the defendant was unlawfully engaged in running its engine and cars over the streets of Frankfort and within the city at

a faster rate of speed than four miles an hour, contrary to and in violation of an ordinance of the city of Frankfort. It was held that this recital was not a sufficient allegation of the fact that there was an ordinance of the city to that effect in force at that time. To the same effect see *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290; *Malott* v. *Sample, supra; Indianapolis, etc., Transit Co.* v. *Foreman, supra; Erwin* v. *Central Union Tel. Co.* (1897), 148 Ind. 365.

The third charge of negligence in the first paragraph of complaint is in substance as follows: It was the duty of the defendant to furnish the cab of the decedent's engine with double-glass windows to prevent the accumulation of frost or ice on the windows; that by reason of the carelessness and negligence of the defendant each of the windows of the cab, at the time of the accident to the decedent, consisted of a single pane of glass, and by reason of the heat on the inside of the cab and the extreme cold on the outside, and the pressure of steam from the engine on the outside, said glass became covered with frost and ice, thereby obstructing the view and preventing the decedent from seeing the open and dangerous condition of the switch.

These allegations are not only subject to the same infirmities as the preceding, but they also fail to show that the absence of frost windows in the engine cab was either the proximate or remote cause of the accident, it not appearing that the windows of the cab were used by the engineer to look for the switch, or that he could have seen the switch through the windows had there been no ice or frost upon them. Neither is it averred that the decedent was ignorant of the fact that frost would accumulate on single window glass during a run on a cold day, nor are there facts alleged showing that he did not assume the risk of its doing so. To constitute actionable negligence all these things should have been affirmatively shown. *American Rolling*

*Mill Co.* v. *Hullinger* (1904), 161 Ind. 673, and cases cited; *Day* v. *Cleveland, etc., R. Co.* (1894), 137 Ind. 206; *Bedford Belt R. Co.* v. *Brown* (1895), 142 Ind. 659; *Louisville, etc., R. Co.* v. *Kemper* (1897), 147 Ind. 561.

The second paragraph of the complaint also averred, in addition to the allegations common to them all, that appellant had Emory McCullough in its employ as a section foreman; that he, as such section foreman, had supervision of that part of appellant's track that included said switch at the station of Quincy; that it was his duty as such section foreman to maintain the part of appellant's track under his supervision in good repair and safe condition for use of defendant's trains and defendant's employes operating the same; that it was the duty of the defendant to keep said switch closed so as to avoid accident to the company's servants engaged in running its trains; that in connection with said switch, and used in opening and closing the same, and for the purpose of informing the servants of said company, engaged in running its trains, as to the condition of said switch, whether open or closed, a certain switch-stand, with two painted metal signals, disks or panels attached to the top thereof, one painted white and the other red, was maintained by the appellant, and that these signals, under ordinary weather conditions, informed the servants operating the trains, on approaching said switch, whether the same was open or closed; that said switch signals were on said day under the control of said McCullough, and it was his duty to adjust the signals and to keep the switch closed, and to keep them in proper repair; that said McCullough, in violation of his duty, negligently opened said switch and permitted it to remain open until the engine operated by the decedent ran into the same and killed him; that said McCullough was guilty of negligence in permitting snow and frost to remain on the red painted signal, on account of which the engineer was prevented from observing the condition of the switch upon approaching the same with his

engine. There are also the same averments in this paragraph of the complaint that are contained in the first paragraph regarding the failure of the appellant to maintain signal-lights on the switch-stand and double-glass windows in the engine cab. There is no averment in either paragraph to indicate that the accident did not happen in broad daylight, and no direct averment that the day was dark and foggy. There is this direct averment: "December 30, 1902, at the time of the accident, was extremely cold and the air was filled with flying particles of frost," and because of the hazy, cloudy and foggy condition of the weather it was impossible for said Barker to see the open condition of said switch, and this further recital: On the day aforesaid said defendant company well knew the condition of the weather, and that the day was dark and hazy. There was no direct averment in either paragraph of the complaint that the weather was either dark, hazy or foggy, nor is there any averment that if the condition of the windows of the cab of the engine had been different the accident would have been prevented; nor are there any allegations showing that Barker did not know the windows were of single glass and liable to become frosted over in a fast run, nor that he did not assume the risk. *American Rolling Mill Co.* v. *Hullinger, supra.* Nor is there any averment that had there been no frost or snow on the switch target the engineer would have seen the target; and, in fact, in this same paragraph, there are contradictory averments, namely, that on account of the weather conditions "it was impossible for said Barker to see and observe the defective condition of the switch until within a few feet of the same," and on a previous page it is averred that Barker failed to see the open condition of the switch because McCullough permitted snow to get upon and obscure the red signal on the switch-stand.

Parties may set up a contradictory state of facts in different paragraphs of either complaint or answer, but it is

not proper for them to set up a conflicting state of facts in the same paragraph. Nor does the complaint in this respect show that the color of the signal panels was the only means by which the engineer could tell the condition of the switch. The pleading does not repel the inference of the fact as it actually existed, that is, that these signal panels could be as readily distinguished by their form as by their color, the one being oval in shape with a hole four inches in diameter in the center of each disk, and the other being square in form with sharp pointed ends; and the complaint wholly fails to show that the result would have been different to the engineer had there been no snow or ice at all formed on the signal disks.

It is evident, however, that in the second paragraph the principal theory of the pleader was to charge McCullough, the section foreman, with being a vice-principal, and acting for the master when he opened the switch and negligently left it open. It is averred that, as section foreman, he had charge and supervision over that part of appellant's road that included the switch at Quincy, and that it was his duty to keep the same in good repair, and safe for appellant's trains and trainmen; that he neglected his duty and opened the switch and failed to close it, and in consequence the accident occurred. It has more than once been held in this State that section or repair men are fellow servants of those operating trains. *Slattery's Admr.* v. *Toledo, etc., R. Co.* (1864), 23 Ind. 81; *Gormley* v. *Ohio, etc., R. Co.* (1880), 72 Ind. 31; *Thompson* v. *Citizens St. R. Co.* (1899), 152 Ind. 461; *Ohio, etc., R. Co.* v. *Tindall* (1859), 13 Ind. 366, 74 Am. Dec. 259. It has also been held that *prima facie* all who enter the same employment are fellow servants, and the burden is on him who denies this to show the contrary. *Southern Ind. R. Co,* v. *Martin* (1903), 160 Ind. 280.

The averment that McCullough was charged with the duty of keeping the track in repair does not fix his character as

a vice-principal while engaged in handling the switch. Handling a switch is not a master's duty, and it cannot be made such by averring that it is. It is the act itself, and not the title of the actor, or the fact that he does superior duties, that characterizes a performer a vice-principal or fellow servant. *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460; *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82; *Indianapolis, etc., R. Co.* v. *Johnson* (1885), 102 Ind. 352. When the section foreman, McCullough, arrived in Quincy he found a safe machine, with a switch and all its appliances in good working condition. He found that the railroad company had done all that it was required to do for the safety of its employes. As one employed to assist in operating the railroad, McCullough owed the company a duty to do his part carefully as pertained to the public, and to the company's property and employes. The railroad was safe before he made it unsafe by going away and leaving the switch open. The negligence was his, and not that of the company. Any other holding would completely overthrow the co-servant rule. Neither do we think the paragraph good under the employers' liability act. As we understand the pleading, an effort is made to charge liability under clause four of §8017 Burns 1908, Acts 1893, p. 294, §1, which relates to the negligence of an employe "having charge of any signal * * * switch yards," etc., by alleging that the painted targets on the switch-stand are "signals," and that a single switch to a siding is a "switch yard," and that the section foreman may be properly in charge within the meaning of the statute.

As such person in charge, McCullough is alleged to have been negligent in two particulars: (1) In turning the switch-stand upon which the signal rested, so as to open the switch; and (2) in permitting frost and snow to accumulate on the red signal so that the decedent could not determine which it was as his train approached it. Neither of these grounds is tenable. First, it is

affirmatively shown that no error was made in operating the signal of the switch. The alleged signal worked automatically, and showed the red, or danger side, just as it should appear when the switch is open. It was the moving of the switch that moved the signal, and not the moving of the signal that moved the switch. Besides it is not averred that Barker, the engineer, could have seen the signal if there had been no snow upon it in time to avoid the accident, and in another part of the same paragraph it is charged that he could not have seen the signal on account of the weather conditions. The effect of the averments concerning the signal is to show that the negligence charged in relation thereto was not the cause of the injury.

Furthermore, switch targets are not signals within the meaning of the statute referred to. As before observed, they work automatically. They are fixtures to the switch-stand, and cannot be manipulated independently of the switch. They are devices so adjusted to the switch-stand that the switch cannot be opened or closed without shifting the targets, the white to a right angle position to the main track when the switch is closed, and the red to a similar position when the switch is open. When in repair they cannot be manipulated so as to mislead any one acquainted with them. The statute manifestly refers to such signals as are complete within themselves, and not subsidiary parts of another device—signals which may be controlled, and, by the display of lights or colors, manipulated by the person in charge to communicate information to approaching trainmen, and that can, by the negligence of the operator, be made to speak falsely to the company's servants, to their injury. We therefore think the second paragraph fails to state a cause of action, and the demurrer thereto should have been sustained.

In the third paragraph it is alleged to be the duty of the defendant to maintain an unobstructed view between the window of its station-house and the target on the switch-

stand, so that the station agent might see from his position at the window in the station-house whether said switch was open or closed, and from said position signal to trainmen approaching with their trains the true position of the switch; that the defendant's track was in plain view from the agent's window in the station-house, and it was the duty of Orrell, the station agent and telegraph operator, to look from his said window and examine the defendant's railroad track, and note the condition of the switches and see that the same were properly set, but the defendant negligently, on the day aforesaid, maintained at a point midway between the depot and switch-stand a large warning board, to caution travelers on the highway, so constructed as completely to obstruct the station agent's view of the switch-stand, and completely to prevent his observing and noting whether the switch was open or closed, and signaling the true condition to those running trains and thereby averting such an accident as befell the decedent; the defendant at the time knew of the existence of said board, and that the same prevented the station agent and telegraph operator from taking note of the condition of the switch from his place at the depot. If the defendant had maintained an unobstructed view of the switch-stand from the depot window, thus enabling the agent Orrell to observe the condition of the switch, he could and would have erected the signal or semaphore in his charge at the depot, and thereby would have warned engineer Barker of the open condition of the switch, thus avoiding the accident.

This paragraph is drawn upon the theory that the appellant was guilty of negligence in obstructing a view of the switch from the station window by maintaining in the line of vision a warning board at the country highway crossing, and thus preventing the agent from seeing the open switch, who would, if he had been able to see it, have warned the decedent by erecting the signal in his charge. The paragraph is bad for more reasons than one. In the first

place it is not stated how it became the duty of Orrell to inspect and note the condition of the railroad tracks and switches, whether by rule, contract, or custom, which omission carries the material fact clearly within the rule declared in *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247, and *Pittsburgh, etc., R. Co.* v. *Peck* (1905), 165 Ind. 537. In the second place the distance between the station-house and the switch-stand is not given, and there is no allegation stronger than a mere recital that the station agent could have seen the target on the switch-stand if the warning board had not intervened. Neither is it averred, except by inference, that there was a semaphore signal available to the agent at the station, nor that he could otherwise have signaled the decedent that the switch was open. The demurrer to the third paragraph should also have been sustained.

It is apparent that the fourth paragraph of the complaint is founded on the fourth clause of section one of the employers' liability act (Acts 1893, p. 294, §8017 Burns 1908), and relies upon the negligence of Orrell, alleged to be in the employ of the defendant, as station agent and telegraph operator, and in charge of the semaphore signal at the Quincy station. It is alleged that on December 30, 1902, the defendant maintained at Quincy, as a part of its railroad system, a side-track connected a short distance north of the station-house with the main track by a switch, which switch was operated by means of a switch-stand, and other devices; that the switch-stand had constructed at the top certain painted wings as targets, designed and used by the defendant as a means of informing its servants operating its trains of the condition of the switch, as to being open or closed; that the switch targets are in full view from the station-house, and in the station-house the defendant maintains a semaphore signal, which on December 30, 1902, was in charge of A. L. Orrell, who was employed by the defendant for the purpose of

managing and controlling said semaphore, and which signal was used as a sign to trainmen operating trains on the defendant's railroad whether the main track was in good condition and safe for them to proceed, and whether said switch was open or closed; that the switch targets were in full view from the station-house and but 400 feet distant therefrom, and Orrell was present at the station and engaged in his said employment; that the switch was open and had been left open continuously for forty minutes before the arrival of the train in charge of the decedent, and before the same was due to arrive, and the target on the switch-stand during all said time showed red, indicating that the switch was open, and the main track unsafe; that it was the duty of Orrell, before the arrival of trains, to look out of his station window and examine the defendant's railroad track, and ascertain the condition and observe and note the condition of the switches, whether open or closed; that for forty minutes before the arrival of Barker's train the target of the switch-stand indicated that the switch was open, and Orrell could, and with the exercise of reasonable diligence would, have seen that the switch was open, and could have raised his semaphore danger-signal in time to enable the decedent to stop his train before the same ran into said open switch, but said Orrell carelessly and negligently set said semaphore signal so as to indicate to the decedent that said main track was clear and safe, when he well knew, or might with reasonable diligence have known, that said track was not clear and safe. By reason of said negligence and the display of said erroneous signal by Orrell the decedent was misled, and ran his train at great speed into said open switch, collided with other cars and was killed.

In this paragraph there are sufficient averments that the company maintained at Quincy, within plain view of the telegraph operator and station agent, a switch-stand surmounted with painted wings or blades that indicated auto-

matically whether said switch was open or closed; and that it also maintained at its Quincy station a semaphore signal that was in charge of Orrell, who was employed by the company to operate the same for the purpose of informing appellant's servants, who were engaged in operating trains running over appellant's road, of the condition of the track, as to whether it was clear and safe for them to proceed, or obstructed and dangerous, and whether the switch was open or closed. It is also averred that it was the "duty" of Orrell before the arrival of trains to look out of the window and examine the defendant's track, and observe and note the condition of said switch, as to being open or closed, and to signify by the use of the semaphore the safe or unsafe condition of the track and switch to those employes approaching the station with their trains, but as in the preceding paragraphs there is a total failure to inform the court by averment how it became Orrell's duty to inspect the switch before the arrival of trains, whether it was enjoined upon him by the terms of his contract of employment, as it was to operate and control the semaphore, or whether by a rule of the company or by a prevailing custom, or whether it sprang from the mere surmise of the pleader. If it was not a duty of his employment to inspect the switch, his failure to do it would not be negligence. The language falls far short of alleging that Barker was employed by the defendant for the purpose of inspecting the switch and track before the arrival of trains, and to communicate to approaching trainmen, by means of the semaphore, the true condition they were in. From the language used, the purpose of the employment by defendant was limited to managing and controlling the semaphore so as to communicate to trainmen, operating trains on the defendant's railroad, whether the track was in good condition and safe for them to proceed, and whether the switch was open or closed. From the averments we cannot infer that it was the duty of Orrell to de-

termine the condition of the switch.    See authorities heretofore cited.

There are other questions arising upon appellant's motion for judgment on the answers to interrogatories and upon the overruling of its motion for a new trial that are left unconsidered because not likely to arise again upon a retrial.

The judgment is reversed, with instructions to sustain the demurrer to the first, second, third and fourth paragraphs of the complaint, and for further proceedings not inconsistent with this opinion.

Judgment reversed.